Hugh C. COSNER, individually and in his official capacity as Chairman of the Board of Supervisors of Spotsylvania County, Virginia, et al., Plaintiffs,

Board of Supervisors of Hanover County, Virginia, Plaintiff-Intervenor,

Board of Supervisors of Chesterfield County, Virginia, Plaintiff-Intervenor,

Joe Hornbarger, individually and in his official capacity as a member of the Town Council for the Town of Christiansburg, Virginia, et al., Plaintiff-Intervenors.

v.

Charles S. ROBB, Governor of Virginia, et al., Defendants.

Kathleen K. Seefeldt, individually and in her official capacity as Chairman of the Board of County Supervisors of Prince William County, Virginia, et al., John F. Herrity, individually and in his official capacity as Chairman of the Board of Supervisors of Fairfax County, Virginia, et al., J. Henry McCoy, Jr., individually and in his official capacity as Mayor of the City of Virginia Beach, Virginia, et al., and Board of County Supervisors of Henrico County, Virginia, Defendant-Intervenors.

James H. ELAM, Jr., et al., Plaintiffs,

v.

Charles S. ROBB, Governor of Virginia, et al., Defendants.

COMMON CAUSE, a non-profit membership corporation suing on behalf of its members, et al., Plaintiffs,

Howard E. Copeland, Plaintiff-Intervenor,

v.

Wayne LUSTIG, Chairman, State Board of Elections, et al., Defendants.

Jack W. GRAVELY, et al., Plaintiffs,

v.

Charles S. ROBB, Governor of Virginia, et al., Defendants.

Norborne P. BEVILLE, Jr., et
al., Plaintiffs,

v.

Charles S. ROBB, Governor of Virginia,
et al., Defendants.

Paula A. FARADAY, et al., Plaintiffs,

v.

Charles S. ROBB, Governor of Virginia,
et al., Defendants.

Albert L. ELY, III, Plaintiff,

v.

Charles S. ROBB, Governor of Virginia,
et al., Defendants.

Civ. A. Nos. 81–0492–R, 81–0516–R, 81–
0530–R, 81–0552–R and 81–591–A.

United States District Court,
E. D. Virginia,
Richmond Division.

Argued June 15, 1982.

Decided June 21, 1982.

burg), challenge the constitutionality of an Act (Chapter 1) that reapportions the electoral districts for the Virginia House of Delegates.[1] We grant the State's motion for summary judgment.

### I

In *Cosner v. Dalton*, 522 F.Supp. 350 (E.D.Va.1981),[2] we held that a prior Virginia redistricting plan [3] violated the equal protection clause of the fourteenth amendment because the variance in the population of the districts, 26.63%, was too great to meet the requirements established in *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), and subsequent cases. We recognized, however, that further proceedings would be necessary and retained jurisdiction. The Virginia General Assembly then enacted a new plan that Governor Dalton vetoed,[4] and later another plan that the Governor returned for reconsideration.[5] The General Assembly enacted a fourth plan that Governor Dalton signed (Chapter 16).[6] The State submitted Chapter 16 to the Attorney General for review under the Voting Rights Act, 42 U.S.C. § 1973c (1976). The Attorney General responded that he was unable to conclude that certain districts in the Tidewater area of Virginia had no discriminatory purpose or effect.[7] He stated that the other districts satisfied the requirements of the Act.

■ Governor Robb then called a special session for reapportionment of the Tidewater districts. The General Assembly enacted HB 1, which upon signature of the Governor became Chapter 1 of the special session. The Attorney General did not object to Chapter 1, though he reserved the right to reexamine the plan if new informa-

Raymond R. Robrecht, Salem, Va. (William R. L. Craft, Jr., Christiansburg, Va., of counsel to the Town of Christiansburg, on brief), for plaintiffs Ely and the Town of Christiansburg.

Elizabeth B. Lacy, Deputy Atty. Gen. (Gerald L. Baliles, Atty. Gen., William G. Broaddus, Chief Deputy Atty. Gen., James E. Moore, Senior Asst. Atty. Gen., John A. Gibney, Jr., Asst. Atty. Gen., Richmond, Va., on brief), for defendants.

Before BUTZNER, Circuit Judge, and WARRINER and GLEN M. WILLIAMS, District Judges.

BUTZNER, Circuit Judge:

Albert L. Ely, III, plaintiff, the Town of Christiansburg and members of the Town Council, plaintiff-intervenors (Christians-

---

1. 1982 Va.Acts Chap. 1 (Special Session April 2, 1982).

2. Charles S. Robb, Governor of Virginia, has been substituted for John N. Dalton, whose term of office expired while this case was pending.

3. 1981 Va.Acts Chap. 12 (Special Session August 11, 1981).

4. HB 7.

5. HB 13.

6. 1982 Va.Acts Chap. 16 (Special Session June 13, 1982).

7. Districts 79, 80, 86, 87, 88, 89, 90, 91, 92, and 95 in the cities of Hampton, Newport News, Norfolk, and Portsmouth.

tion should come to him within 60 days of the plan's submission.[8]

Since then, all the complainants in this case,[9] except Ely and Christiansburg, have stated that they have no objection to Chapter 1.

## II

Christiansburg's complaint in intervention is similar to Ely's second amended complaint. They seek a declaratory judgment that Chapter 1 violates the Virginia Constitution and the equal protection clause of the fourteenth amendment. They request an injunction against primary and general elections and ask the court to reapportion the electoral districts of the House of Delegates.

In count one they allege:

Chapter 1 ... violated the provisions of Article IV, Sections 11, 12 and 15 of the Constitution of Virginia in that the call of the Governor for said Special Session and a subsequent resolution adopted by the said General Assembly unconstitutionally limited the scope of the aforesaid reapportionment bill which was, under the Constitution of Virginia, a general reapportionment bill, but said bill was in fact enacted as a special bill in violation of the Constitution of Virginia in that the actual subject matter of and proposed amendments to said Bill were arbitrarily, capriciously, and unconstitutionally limited to one particular area of the state, thus denying Plaintiff and other citizens

of the Commonwealth the same or equal protection of the law under the 14th Amendment to the Constitution of the United States.

In count two they allege:

To the extent that the aforesaid limited action of the General Assembly was predicated upon the call for the said 1982 Special Session by the Governor of Virginia, such action violated Article I, Section 5 of the Constitution of Virginia in that the legislative and executive functions of the Commonwealth should be separate and distinct.

In count three they allege:

Article II, Section 6 of the Constitution of Virginia provides that electoral districts for the House of Delegates "shall be composed of contiguous and compact territory ...."

The present House reapportionment plan violates Article 11, Section 6 of the Constitution of Virginia in that many of the House electoral districts [including 21 designated districts] are not composed of compact territory ....[10]

Ely and Christiansburg do not allege that the variance in the population of the districts is unconstitutional or that the plan violates the rights of minority voters on racial grounds.

## III

The parties have stipulated that there is no genuine issue as to any material fact and

---

**8.** Reservation of the right to re-examine a submitted plan is authorized by the Voting Rights Act, 42 U.S.C. § 1973c (1976). This reservation does not bar judicial review. *Cosner*, 522 F.Supp. at 356.

**9.** Gravely (NAACP), Common Cause, Elam (ACLU), Copeland (Delegate from Norfolk), Beville, Farrady, the City of Virginia Beach, and the Counties of Chesterfied, Fairfax, Hanover, Henrico, Spotsylvania, and Prince William.

Actions recently filed by a number of other counties are pending. Some, on motion of the State, were consolidated with this case, but because of procedural objections made by the complainants, they have been severed.

**10.** Christiansburg elaborates on its pendent state claim in count three as follows:

> Plaintiffs-Intervenors reside in the proposed Twelfth and Thirteenth House of Delegates Districts. Said districts do not conform to the aforesaid requirements of Article II, Section 6 of the Constitution of Virginia in that they are not compact and contiguous and in attempting to create such districts the General Assembly has arbitrarily and capriciously disregarded relevant factors such as community of interest and conformity to the historical inclusion of towns in a single House of Delegates District. The aforesaid districts Twelve and Thirteen can and should be drawn to comply with Article II, Section 6 of the Constitution of Virginia and to place Plaintiffs-Intervenors and the Town of Christiansburg in one or the other of said districts.

that the motion for summary judgment is matured for resolution.

From the pleadings, exhibits, and affidavits submitted by the parties, we find the following uncontested facts:

1. After Chapter 16 was signed by the Governor and submitted to the Attorney General, the General Assembly enacted HB 641 to correct technical errors[11] that had been found in it. The Governor did not sign HB 641.

2. A delegate sought an opinion from the Attorney General of Virginia about the Governor's authority to limit the business of the special session to the reapportionment of the Tidewater districts. The Attorney General of Virginia stated: "I am of the opinion that the Governor is free to limit the subject matter on which he bases his proclamation convening the General Assembly into special session, but the General Assembly is not restricted to the subject matter specified in the Governor's proclamation."

3. The General Assembly then adopted House Joint Resolution No. 2, which limited the legislation to be considered by the special session as follows:

RESOLVED by the House of Delegates, the Senate concurring, That during the Special Session of the General Assembly . . . no legislation other than matters of a purely procedural nature shall be considered except, (1) legislation dealing with the reapportionment of [the Tidewater districts], and (2) the realignment of House districts to conform with the provisions of HB 641 passed by the 1982 General Assembly.

4. The House then considered HB 1. Several members of the House sought to introduce floor amendments changing the boundaries of districts other than those in Tidewater, but pursuant to the Joint Resolution, the Speaker ruled them out of order. The Joint Resolution, however, did not preclude any delegate from offering an amendment changing the Tidewater districts. An amendment revising the Tidewater districts to eliminate the Attorney General's objections was accepted for consideration and adopted. HB 1 also corrected the technical errors that had been the subject of HB 641, but it did not otherwise change the boundaries of districts outside Tidewater established by Chapter 16.

5. The Town of Christiansburg, which is far removed from Tidewater, had requested its delegate to offer an amendment affecting the town. When the delegate observed that similar amendments were ruled out of order, he did not offer the amendment. The amendment was offered in the Senate, but the presiding officer ruled it out of order pursuant to the Joint Resolution.

6. With the exception of the Tidewater districts and technical corrections, the Chapter 1 apportionment is identical to that found in Chapter 16 and HB 641, both of which had previously been enacted by the General Assembly without the limitations imposed by the Joint Resolution.

7. Chapter 1 divides the state into 100 single-member districts with a maximum population variance of about 5%.

The gravamen of count one of the complaints filed by Ely and Christiansburg, as amplified by their memoranda in opposition to summary judgment and by oral argument, is that the Governor's proclamation and the Joint Resolution allowed reapportionment of the Tidewater districts but prohibited reapportionment of other districts. This limitation, they complain, violated the Virginia Constitution and denied them the equal protection of the laws in contravention of the fourteenth amendment.

IV

■ The evidence on which Ely and Christiansburg rely discloses no violation of the equal protection clause. When Chapter 16 and HB 641 were enacted, all delegates were entitled to vote on the composition of all districts. Because these districts, other

---

11. For example, HB 641 corrected an erroneous street name, renumbered several districts, and modified references to precinct boundaries. Two precincts outside Tidewater that had been split into different districts were realigned. These changes are not an issue in this case.

than those in Tidewater, were left unchanged in Chapter 1, it is apparent that the delegates representing Ely, Christiansburg, and the residents of other areas of the state were afforded an opportunity to participate in the deliberation and to vote on the composition of all districts. Moreover, all delegates could vote on the limitations of the Joint Resolution, which the General Assembly imposed on itself, and all could offer and vote on amendments pertaining to the Tidewater districts.

In sum, it appears from the evidence that the General Assembly intended to retain all provisions of the reapportionment plan previously enacted except the parts pertaining to the Tidewater districts. It could have expressed its intent by voting against amendments affecting other districts one by one. It achieved the same result through the Joint Resolution, which classified the Tidewater districts, and, consequently, their residents, differently from other residents.

█ It is not enough for Ely and Christiansburg to show that the residents of Tidewater were treated differently from the residents of other parts of the state. The fourteenth amendment allows the states to treat different classes of persons in different ways. The equal protection clause is not offended if the classification is reasonable and rests "upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920).

We conclude that the Joint Resolution and the actions taken pursuant to it satisfy this test. The Attorney General had faulted only the apportionment of the Tidewater districts. He found no deficiencies in the apportionment of the other districts. Therefore, it was reasonable for the General Assembly to classify the residents of Tidewater differently from the residents of other parts of the state who were not similarly situated. The difference in classification had a "fair and substantial relation to the object of the legislation," which was to enact an apportionment plan that would satisfy the requirements of the Voting Rights Act. To achieve this purpose, only the Tidewater districts, not the rest of the state, had to be reapportioned.

The allegations that the Governor's proclamation and the action of the General Assembly violated the Constitution of Virginia do not lend support to the federal claims of Ely and Christiansburg. An essentially similar argument was rejected in *Leser v. Garnett*, 258 U.S. 130, 137, 42 S.Ct. 217, 66 L.Ed. 505 (1922), where it was alleged that resolutions of the Tennessee and West Virginia legislatures ratifying the nineteenth amendment were "inoperative, because [they were] adopted in violation of the rules of legislative procedure prevailing in the respective States." The Court refused to consider the violations of state procedures and held that the resolutions, having been duly authenticated, were conclusive. In *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), the Court held that malapportionment of a state legislature presented a justiciable question. But *Baker* distinguished, and did not overrule, *Leser*. 369 U.S. at 214, 82 S.Ct. at 708.

We therefore conclude that summary judgment should be entered against Ely and Christiansburg on the federal claims alleged in counts one and two of their complaints.

### V

Count three of the complaint alleges that 21 districts do not conform to Article II, Section 6 of the Constitution of Virginia, which requires all districts to be "composed of contiguous and compact territory." Ely and Christiansburg ask us to take jurisdiction of this pendent state law claim. They point out that earlier in this litigation [12] we tried several federal issues and that our order afforded the State an opportunity to submit a new plan conforming to both the federal and state Constitutions.

---

**12.** *Cosner v. Dalton*, 522 F.Supp. 350 (E.D.Va.     1981).

Our earlier decision, however, dealt with a plan of apportionment entirely different from Chapter 1. The primary issues were population variance and dilution of black citizens' voting strength. Similar complaints have not been voiced against Chapter 1 in this case.[13]

■ There are three difficulties with our exercise of pendent jurisdiction. First, the federal and state claims raised by Ely and Christiansburg do not "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Their federal claims allege that the legislative process denied them the equal protection of the laws. Their state claims allege that the districts do not conform to the state constitutional requirement that districts must be compact and contiguous. Thus, the factual and legal issues underlying the state and federal claims are entirely different. Second, because we have granted summary judgment on the federal claims, no federal issue in this case remains to be tried. Third, the Supreme Court of Virginia has not yet construed the state constitutional requirement for districts "of contiguous and compact territory." Authoritative construction of this clause can only be made by that Court.

In *United Mine Workers*, 383 U.S. at 726, 86 S.Ct. at 1139, the Court said:

It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them .... Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial,

even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

Guided by these precepts, we decline to accept jurisdiction of the state constitutional claims alleged in the complaint.

## VI

Several plaintiffs seek an award of attorneys' fees pursuant to 42 U.S.C. § 1988, and the State has asked for an award against Ely and Christiansburg.

■ We conclude that the plaintiffs who prevailed in the earlier phase of this litigation are entitled to an allowance of reasonable fees, costs, and expenses as provided by law. For the purpose of ascertaining these allowances, the case is remanded to Judge Warriner. *See Mader v. Crowell*, 506 F.Supp. 484, 485–86 (M.D.Tenn.1981).

■ We also conclude that the State is not entitled to an award of fees against Ely and Christiansburg. We do not consider their federal claims to be frivolous. Although we have found them to lack merit, we recognize that no precedent specifically addresses the issues they raised. The request for the exercise of pendent jurisdiction, when read in conjunction with the prior proceedings, is not frivolous, unreasonable, or without foundation. *See Hughes v. Rowe*, 449 U.S. 5, 15–18, 101 S.Ct. 173, 179–180, 66 L.Ed.2d 163 (1980).

We deny Ely and Christiansburg declaratory and injunctive relief on their federal claims and decline to adjudicate their pendent state law claims. Judgment will be entered for the defendants.

---

13. In a separate case not yet matured for decision, Surry County has alleged that Chapter 1 dilutes the voting strength of the county's black residents. Unlike the other county cases now severed, *see* n.9, *supra*, Surry's case was not consolidated with *Cosner v. Robb*.