Willard B. CLINE, individually and in his official capacity as Chairman of the Board of Supervisors of Augusta County, Virginia; et al., Complainants,

v.

Charles S. ROBB, Governor, Commonwealth of Virginia; et al., Defendants.

John B. ADAMS, individually and in his official capacity as Chairman of the

Board of Supervisors of Fauquier County, Virginia; et al., Complainants,

v.

Charles S. ROBB, Governor, Commonwealth of Virginia; et al., Defendants.

A. Carl HANDLEY, Jr., individually and in his official capacity as Chairman of the Board of Supervisors of Middlesex County, Virginia; et al., Complainants,

v.

Charles S. ROBB, Governor, Commonwealth of Virginia; et al., Defendants.

Jennings L. MORRIS, individually and in his official capacity as Chairman of the Board of Supervisors of Rockingham County, Virginia; et al., Complainants,

v.

Charles S. ROBB, Governor, Commonwealth of Virginia; et al., Defendants.

Leslie A. BALLARD, individually and in his official capacity as Chairman of the Board of Supervisors of Tazewell County, Virginia; et al., Complainants,

v.

Charles S. ROBB, Governor, Commonwealth of Virginia; et al., Defendants.

Civ. A. Nos. 82–0256–R to 82–0258–R, 82–0307–R and 82–0359–R.

United States District Court, E. D. Virginia, Richmond Division.

Argued Sept. 10, 1982.

Decided Sept. 28, 1982.

---

Robert C. Fitzgerald, Myron C. Smith, Fairfax, Va. (Edward A. Plunkett, Jr., County Atty., County of Augusta, Stuarts Draft, Va.; James P. Downey, County Atty., County of Fauquier, Fairfax, Va.; James H. Ward, Jr., County Atty., County of Middlesex, Saluda, Va.; George R. Aldhizer, Jr., County Atty., County of Rockingham, Harrisonburg, Va.; Robert M. Galumbeck, Commonwealth's Atty., Tazewell, Va., Tazewell County), for complainants.

Elizabeth B. Lacy, Deputy Atty. Gen., Richmond, Va. (Gerald L. Baliles, Atty. Gen., William G. Broaddus, Chief Deputy Atty. Gen., John A. Gibney, Jr., Asst. Atty. Gen., Richmond, Va.), for defendants.

Before BUTZNER, Circuit Judge, and WARRINER and GLEN M. WILLIAMS, District Judges.

BUTZNER, Circuit Judge:

The plaintiffs in this consolidated action are members of the Boards of Supervisors of the counties of Augusta, Fauquier, Middlesex, Rockingham, and Tazewell who challenge individually and in their official capacities the constitutionality of Chapter 1 of the Virginia General Assembly that reapportions the House of Delegates.[1] We conclude that Chapter 1 does not violate the equal protection clause of the fourteenth amendment, and we dismiss the plaintiffs' pendent state law claim.[2]

I

Chapter 1 divides the Commonwealth into single-member districts, over half of which contain a divided county or municipality.[3] Both of these characteristics are new to Virginia, and it is against the latter—the division of a county among three districts— that the plaintiffs launch their attack.

The plaintiffs' counties are affected as follows: Augusta is divided among the 24th, 25th, and 26th districts; Fauquier among the 31st, 32d, and 53d districts; Rockingham among the 26th, 27th, and 28th districts; and Tazewell among the 3d, 4th, and 5th districts.[4] Middlesex, though not divided, is joined to two counties, which are 20 miles across the Chesapeake Bay on the Eastern Shore, in the 100th district.[5]

The plaintiffs submit that the legislature is required by the equal protection clause to respect community interests by joining only homogeneous areas in a single legislative district.[6] They contend that splitting a county into three districts dilutes the voting strength of the county's citizens as effectively as any malapportionment. The situation is said to be particularly serious in a state, like Virginia, that adheres to the restrictions of Dillon's rule.[7] Fragmentation,

---

1. 1982 Va. Acts Chap. 1 (Special Session April 2, 1982).

2. This is the third in a series of cases that find their origin in the Virginia General Assembly's efforts to redistrict its House of Delegates. The legislative history of the several apportionment acts has been recounted in previous decisions. *See Cosner v. Robb,* 541 F.Supp. 613 (E.D.Va.1982), and *Cosner v. Dalton,* 522 F.Supp. 350 (E.D.Va.1981).

3. Thirty-seven counties are divided or combined under Chapter 1. Fifty-two of the 100 districts contain a divided political subdivision. The parties agree that it is impossible to avoid division of political subdivisions if only single-member districts are created.

4. The population divisions of the counties are as follows:

**Augusta County**

| Augusta Population | | District Population |
| --- | --- | --- |
| District 24: | 5,427 | 52,975 |
| District 25: | 17,341 | 54,527 |
| District 26: | 30,964 | 54,510 |

**Fauquier County**

| Fauquier Population | | District Population |
| --- | --- | --- |
| District 31: | 11,265 | 53,129 |
| District 32: | 16,940 | 52,573 |
| District 53: | 7,684 | 54,748 |

**Rockingham County**

| Rockingham Population | | District Population |
| --- | --- | --- |
| District 26: | 14,749 | 54,510 |
| District 27: | 34,495 | 54,166 |
| District 28: | 7,794 | 54,754 |

**Tazewell County**

| Tazewell Population | | District Population |
| --- | --- | --- |
| District 3: | 6,802 | 52,645 |
| District 4: | 15,583 | 53,572 |
| District 5: | 28,126 | 52,285 |

5. The populations of the three counties composing the 100th district are:

| | |
| --- | --- |
| Accomack | 31,268 |
| Northampton | 14,625 |
| Middlesex | 7,719 |
| Total | 53,612 |

6. The plaintiffs do not claim that by splitting their counties the General Assembly has discriminated against a racial minority. Nor do they claim that the division of their counties violates the equal-population principle of *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). Indeed, the population variance for Chapter 1 is 5.24%, an acceptable statistical result.

7. *See* Va.Const. art. VII, § 2; II A. Howard, Commentaries on the Constitution of Virginia 809–12 (1974). Dillon's rule posits:

It is a general and undisputed proposition of law that *a municipal corporation possesses*

the plaintiffs insist, effectively destroys a divided county's opportunities to gain the legislative enactments it needs to function effectively.

Plaintiffs' second claim is that the composition of their districts violates Art. II, § 6 of the Virginia Constitution, which requires legislative districts to be both contiguous and compact. They particularly protest the configuration of the 26th district, which extends 100 miles from the West Virginia border to the northeast part of the state, and the composition of the 100th district, where Middlesex is separated from the Eastern Shore by 20 miles of the Chesapeake Bay.[8] The violation of this state constitutional provision is said to be one of federal constitutional dimension. That is, plaintiffs argue that the contiguity of regions within districts, and the compactness of districts, is a necessary element in protecting communities of interest from fragmentation. Only by protecting communities of interest and adhering to the requirements of contiguity and compactness, submit the plaintiffs, can each citizen be guaranteed the effective vote contemplated by the equal protection clause.

Additionally, the plaintiffs plead violation of the Virginia Constitution as a pendent cause of action. They argue that, as their federal grounds for relief are not insubstantial, and as both their federal and state claims share a common nucleus of operative fact, this court should take jurisdiction of their state claim under the authority of *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

To support their position, the plaintiffs introduced evidence through the affidavits[9] of their expert witness, elected officials from each of the affected counties, election officials, political party leaders, and, in the case of Fauquier, the editor of the county newspaper. The purport of all the affidavits is that each of the partitioned counties has little in common with the other areas of their legislative districts. The districts are described as economically dissimilar from the counties, divided by natural barriers, and possessing few common means of communication. The plaintiffs also introduced testimony that the state's expert gave in *Cosner v. Dalton,* 522 F.Supp. 350 (E.D.Va. 1981), extolling the virtues of maintaining the integrity of political subdivisions in any reapportionment plan.

The plaintiffs seek a declaration that Chapter 1 is unconstitutional and request adoption of either of two plans submitted by their expert witness. Under both of these plans, the counties of Augusta, Rockingham, and Tazewell will remain divided, though into only two districts rather than three. Fauquier will be left intact, and Middlesex will be rejoined to the counties of the Middle Peninsula. According to the expert, neither plan dilutes the voting strength of minority populations, and both fall within tolerable limits of population deviation.[10]

Should the court find neither plan acceptable, plaintiffs request an order allowing the General Assembly to correct constitu-

---

*and can exercise the following powers, and no others:* First, those granted in *express words;* second, those *necessarily or fairly implied* in or *incident* to the powers expressly granted; third, those *essential* to the accomplishment of the declared objects and purposes of the corporation,—not simply convenient, but indispensable.
1 J. Dillon, Commentaries on the Law of Municipal Corporations § 237 (5th ed. 1911) (emphasis in original). *See generally* Note, Dillon's Rule: The Case for Reform, 68 Va.L.Rev. 693 (1982).

**8.** The overland trip from Middlesex to the Eastern Shore passes through seven other districts, costs $10 in tolls (one way), and takes two and

one-half hours to travel the one hundred twenty-six miles.

**9.** To reduce expenses, all parties, with leave of court, have submitted affidavits which by stipulation constitute the testimony of the respective affiants.

**10.** Plaintiffs claim the statistical variance for the first plan is 7.3% and 9.86% for the second. It must be noted, however, that the separation of Middlesex county from the Eastern Shore creates a variance in district 100 of −14.16%. Plaintiffs contend that under the authority of *Mahan v. Howell,* 410 U.S. 315, 93 S.Ct. 979, 35 L.Ed.2d 320 (1973), they need not include this variance in their maxima.

tional deficiencies. The plaintiffs do not seek delay of the November 1982 elections, conceding that time will not allow a new plan to be put into effect. Finally, they pray for attorneys' fees, courts costs, and other appropriate relief.

The defendants respond to the plaintiffs' contentions in several ways. They argue that the decision to use single-member districts as a criterion of redistricting was a rational choice reached after it had become apparent that multi-member districts which preserved the integrity of political subdivisions were not feasible. The defendants contest the plaintiffs' claim that Chapter 1 fragments communities of interest. Through their own experts, the defendants introduced evidence that complete homogeneity is impossible to achieve in an area the size of a legislative district. Also, their testimony disclosed that in many instances counties are inappropriate bases on which to define communities of interest because they are themselves heterogeneous. Finally, the defendants introduced a statistical analysis from which their expert concluded that the areas embraced by the challenged districts shared important common interests.

## II

■ Initially, the defendants question the plaintiffs' standing to sue for two reasons. First, the plaintiffs have failed to demonstrate the presence of any actual harm from the passage of Chapter 1. Second, their counties lack standing, for the rights secured by the equal protection clause are personal.

As noted at the outset, the plaintiffs have brought suit in both their individual and official capacities. It is uncontroverted that the plaintiffs are residents of the counties alleged to be unconstitutionally fragmented. Their own votes, they claim, will be diluted. In their official positions, the plaintiffs are charged with administering elections. Also, they have a significant role in obtaining a fair proportion of state funds allocated to political subdivisions for financing many aspects of local government.

Fragmentation of their counties and their constituents, they assert, will impede the performance of their duties.

It appears from the complaints and the supporting affidavits that the plaintiffs have demonstrated the existence of a controversy with the defendants and a personal interest in its outcome sufficient to warrant invocation of the court's jurisdiction and to justify their petition for relief. Although the defendants' challenge raises a close and difficult issue, we conclude that the plaintiffs have standing. *See Warth v. Seldin,* 422 U.S. 490, 498–502, 95 S.Ct. 2197, 2204–07, 45 L.Ed.2d 343 (1975); *United States v. SCRAP,* 412 U.S. 669, 683–690, 93 S.Ct. 2405, 2413–17, 37 L.Ed.2d 254 (1973).

## III

■ The Virginia General Assembly primarily relied on two criteria when it reapportioned the districts for the House of Delegates—equality of population and representation through single-member districts. The equal protection clause requires districts of substantially equal population. *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). The Supreme Court has approved single-member districts in reapportionment plans devised by district courts. *Chapman v. Meier,* 420 U.S. 1, 14–21, 26–27, 95 S.Ct. 751, 759–63, 765–66, 42 L.Ed.2d 766 (1975). In view of *Chapman,* it would be anomalous, indeed, for us to hold that a state legislature cannot choose to reapportion by the use of single-member districts. We therefore conclude that the General Assembly's choice of single-member districts to achieve equality of population was well within the ambit of legislative discretion.

The plaintiffs assert, however, that the equal protection clause requires the legislature to respect the integrity of political subdivisions because the powers of local government are derived from state laws. In support of their position, they rely primarily on *Connor v. Finch,* 431 U.S. 407, 97 S.Ct. 1828, 52 L.Ed.2d 465 (1977), and *Mahan v. Howell,* 410 U.S. 315, 93 S.Ct. 979, 35 L.Ed.2d 320 (1973).

*Connor v. Finch* and *Mahan v. Howell* do not provide controlling precedent for the plaintiffs' position. Both cases recognized the legitimacy of a state's choice to maintain the integrity of political subdivisions at the expense of some deviation from the principle of population equality. To this extent they expanded legislative discretion by permitting reasonable departure from strict mathematical equality. Neither case, however, hobbled legislative discretion to opt for single-member districts that require the fragmentation of counties and municipalities.

Indeed, precedent supports the choice of the General Assembly to reapportion the state into single-member districts that cut across county lines. In *Gaffney v. Cummings,* 412 U.S. 735, 93 S.Ct. 2321, 37 L.Ed.2d 298 (1973), the Court upheld a reapportionment plan devised by state officials to create single-member districts of substantially equal population. Contrary to a state constitutional provision, the plan split many subdivisions, linking their segments to other subdivisions. Moreover, as here, some of the subdivisions were fragmented into more than two parts. Nevertheless, because the plan created single-member districts with substantially equal population, it was valid.

■ The charge that Chapter 1 ignores communities of interest and geographically isolates Middlesex and segments of other counties does not establish a violation of the equal protection clause. States may consider these concerns, and in some instances their constitutions require them to do so. A federal court must defer to the legislature's judgment about the significance of these factors in the reapportionment process if the state has enacted an otherwise valid reapportionment plan. *See Reynolds v. Sims,* 377 U.S. 533, 577–81, 84 S.Ct. 1362, 1389–91, 12 L.Ed.2d 506 (1964); *Ferrell v. Oklahoma,* 339 F.Supp. 73, 82 (W.D.Okla.), *aff'd,* 406 U.S. 939, 92 S.Ct. 2045, 32 L.Ed.2d 328 (1972).

■ Also, we cannot accept the plaintiffs' argument that lack of compactness and contiguity violate the equal protection clause. The Court noted in *Gaffney* that "compactness or attractiveness has never been held to constitute an independent federal constitutional requirement for state legislative districts." 412 U.S. at 752 n.18, 93 S.Ct. at 2331 n.18. Similarly, contiguity has not been held to be a requirement of equal protection. Insofar as the plaintiffs' federal claims are concerned, the joinder of Middlesex to the Eastern Shore was a rational choice made by the General Assembly in furtherance of its twin goals of population equality among single-member districts.

*Mahan v. Howell,* 410 U.S. 315, 326, 93 S.Ct. 979, 986, 35 L.Ed.2d 320 (1973), reiterated that the proper test for determining whether a state apportionment plan violates the equal protection clause is whether it has a rational basis. The attainment of population equality among single-member districts satisfies this test and establishes the constitutionality of Chapter 1.

IV

■ The plaintiffs' remaining claim asserts a violation of the contiguity and compactness requirement of Art. II, § 6 of the Virginia Constitution. In *Cosner v. Robb,* 541 F.Supp. 613 (E.D.Va.1982), we abstained from deciding an identical pendent state law claim. The same principles of comity and federalism apply here. Foremost among these is the fact that the Supreme Court of Virginia has yet to interpret the meaning of this state constitutional provision. In *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), the Court said:

> It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them.... Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by pro-

curing for them a surer-footed reading of applicable law.

Guided by these principles, we decline to adjudicate the plaintiffs' state constitutional claim.

## V

The defendants have moved for attorneys' fees against the plaintiffs pursuant to 42 U.S.C. § 1988. We conclude that the defendants are not entitled to such an award. The plaintiffs' claims, though without merit, were not frivolous. No precedent specifically addressed some of the federal issues that they raised, and the request for this court to exercise its pendent jurisdiction was not frivolous, unreasonable, or without foundation. *See Hughes v. Rowe,* 449 U.S. 5, 15–18, 101 S.Ct. 173, 179–80, 66 L.Ed.2d 163 (1980); *Cosner v. Robb,* 541 F.Supp. at 619.

Judgment will be entered for the defendants on all issues except their application for attorney's fees.