FAIRFAX-FALLS CHURCH COMMUNITY SERVICES BOARD

V.

PATIENCE S. HERREN AND ALLEN G. SCHOR

Record No. 821036

November 27, 1985

Present: All the Justices

Marcus D. Williams, Assistant County Attorney (David T. Stitt, County Attorney; Robert Lyndon Howell, Senior Assistant County Attorney, on briefs), for appellant.
William E. Artz Shevlin, Artz & Curtis, P.C., on brief), for appellees.

RUSSELL, J., delivered the opinion of the Court.

This appeal raises questions with regard to the validity of contracts of employment extending over a term of several years between individual employees and an agency of local government. Appellant contends that such multi-year contracts offend the debt clause, art. VII, § 10, of the Virginia Constitution. Appellant raises further questions concerning damages for breach of such contracts. Appellees contend that such contracts fall within an exception to the application of the debt clause which authorizes long-term contracts for services.

The Fairfax-Falls Church Community Services Board (Board) is an agency created pursuant to Code § 37.1-194 *et seq.* to serve the County of Fairfax and the cities of Fairfax and Falls Church. It receives funds from those jurisdictions, from the Commonwealth, from federal grants, and from fees generated by mental health facilities which it operates. Code § 37.1-197(d) specifically authorizes the Board to "enter into contracts for rendition or operation of services or facilities."

On June 1, 1978, the Board entered into a contract with Allen G. Schor, employing him as a Community Mental Health Director for a three-year period from October 27, 1978 to October 26, 1981. On April 5, 1980, the Board entered into a similar contract with Patience S. Herren, employing her as Director of Administration for the Northwest Center for Community Health for a three-year period, from April 5, 1980 to April 4, 1983. Schor and Herren performed the duties of their respective positions until

June 27, 1981. Their contracts provided that the employment could be terminated for failure of the employees to comply with the contractual terms and conditions, but did not make the employment contingent upon the funding of the positions from year to year.

On October 27, 1980, the Board entered into a "Memorandum of Agreement" with the Fairfax County Board of Supervisors which provided that the Board's personnel on fixed term service contracts would be converted to salaried positions with the County's "merit system" by July 1, 1981. Schor and Herren were informed that their existing contracts would be terminated on June 30, 1981, but that they would be given the option of a "voluntary, non-competitive transfer" to the County "merit system" if they would waive their rights under the existing contracts and apply for such transfer before June 30, 1981.

Rather than exercising that option, Schor and Herren filed identical motions for judgment against the Board on April 8, 1981, contending that it had committed an anticipatory breach of their contracts. While these suits were pending, they applied for transfer to the County's "merit system." The County's Director of Personnel informed them, by memorandum dated April 30, 1981, that they had the option of "voluntary" transfer to the "merit system," or standing on their rights under the existing contracts, but not both. They interpreted this response to mean that they would not be accepted into the County's system while their suits were pending. Their employment by the Board ended June 30, 1981.

The cases were submitted to the court, without a jury, on stipulated facts. By letter opinion, the court held that the contracts of employment were continuing-services contracts which created an obligation to pay for services in installments as the services were furnished and that they, therefore, did not constitute long-term debts prohibited by the debt clause of the Virginia Constitution. The court adopted the view that because the contracts were terminated by the Board without cause, the measure of damages for breach would be the amount of compensation to accrue under the contracts from the date of breach to the end of the contract period, less mitigation. Finding that the plaintiffs had made sufficient efforts to mitigate damages, the court entered judgment against the Board for $22,440.96 in Schor's favor and $73,828.35 in Herren's favor, representing the compensation which would

have accrued to Schor and Herren from June 27, 1981, until the end of their respective contractual periods of employment.

Art. VII, § 10(b) of the Virginia Constitution provides: "No debt shall be contracted by or on behalf of any county or district thereof or by or on behalf of any regional government or district thereof except by authority conferred by the General Assembly by general law." Subject to certain exceptions not pertinent here, that section also prohibits legislative authorization of any debt extending beyond the current year unless provision is made for a referendum. Approval by a majority of the qualified voters is made a prerequisite to contracting the debt. *Id.*

The Board argues that it is an agency of the jurisdictions which contribute to its support,* that its employment contracts constitute debts contracted "on behalf of" Fairfax County which extend beyond the current year in which they were contracted, that no referendum was ever authorized or held in order to validate them, and that they are therefore void. Schor and Herren contend that even if their contracts are to some extent debts of Fairfax County, which they do not concede, they are nevertheless contracts for continuing services to the county and cities which fall within a well-recognized exception to the debt clause.

Contracts obligating a local government to pay for continuing services only *after* the services are rendered do not constitute a commitment for debt within the meaning of the Constitution. Even though such contracts may extend over a period of years, they are construed only as commitments to honor each year the account payable incurred for services rendered that year. *Fairfax County* v. *County Executive*, 210 Va. 680, 683-84, 173 S.E.2d 869, 872 (1970). On the other hand, if a local government contracts an unconditional debt, it cannot avoid the constitutional debt clause by agreeing to repay it in annual installments. *American-LaFrance* v. *Arlington County*, 164 Va. 1, 9, 178 S.E. 783, 786 (1935). The distinction depends upon whether the local government is unconditionally liable for the whole debt, even though payment is postponed, or whether its obligation to pay only arises

---

* Although the debt clause applicable to cities and towns, Va. Const. Art. VII, § 10(a), is quite different, *see Fairfax County* v. *County Executive*, 210 Va. 253, 258-61, 169 S.E.2d 556, 559-61 (1969), the parties made no contention below, and make none here, that partial sponsorship of the Board by the cities of Fairfax and Falls Church should affect the result. Accordingly, we shall confine our consideration to the effect of the constitutional debt clause applicable to Fairfax County. Rules 5:18, 5:25, 5:27, 5:28.

after it has received, within each year, the service contracted for that year. *Fairfax County* v. *County Executive*, 210 Va. at 684, 173 S.E.2d at 872.

■ We conclude that the obligations of the Board are, to some extent, debts contracted "on behalf of" Fairfax County within the meaning of the constitutional debt clause. The Board is an agency created by statute and has no authority beyond that granted by the General Assembly. The statutory scheme under which it existed at the pertinent time, (Code of 1950, tit. 37.1, ch. 10 (Repl. Vol. 1976)), provided that it would function as an agency of its respective governing bodies, §§ 37.1-195, 37.1-197(b), 37.1-198 (Repl. Vol. 1976); that it would be responsible to its governing bodies, § 37.1-195 (Repl. Vol. 1976); and that it would prepare and submit a program of mental health and retardation services to its governing bodies, receive such funds as the governing bodies appropriated for that purpose, and "execute such program and maintain such services as may be authorized under such appropriations," § 37.1-197(b) and (c) (Repl. Vol. 1976). It was authorized by § 37.1-197(d) (Repl. Vol. 1976) to "enter into contracts for rendition or operation of services or facilities," but this authority was clearly circumscribed by the preceding limitations restricting the Board to the funds appropriated by, and the programs authorized by, the governing bodies.

■ The evidence shows that in actual practice, Fairfax County maintained strict control of the Board's expenditures. The County was designated as the Board's fiscal agent. It deposited all the Board's funds in "Fund 55," earmarked for the Board, but required that those funds be disbursed to meet the Board's expenses, including personnel compensation, only in accordance with each year's budget, as approved by the Fairfax County Board of Supervisors. The Board was in no sense an independent agency administering a special fund derived from revenues of the enterprise which it operated, such as to insulate the public fisc from its debts. *Cf. Farquhar* v. *Board of Supervisors*, 196 Va. 54, 61, 82 S.E.2d 577, 582 (1954). Accordingly, the contracts of employment between Schor and Herren, respectively, and the Board, to the extent that they extended beyond the current years in which they took effect, constituted long-term obligations binding Fairfax County. They fall within the constitutional debt prohibition unless they meet the continuing-services exception.

In our view, it is unnecessary to decide whether the contracts meet the continuing-services exception. If we assume that they do, it follows that Schor and Herren incurred no damages. It is in the nature of continuing-services contracts which fall outside the constitutional debt clause that they impose no obligation on the governing body to pay for future services, but only to meet accounts payable for services already rendered within each accounting year. It is conceded here that Schor and Herren were paid in full for all services they rendered to the Board up to their date of termination. The attributes of continuing-services contracts which cause them to fall outside the debt clause also preclude the application of the doctrine of anticipatory repudiation. To survive the debt prohibition, such contracts must be severable into annual segments. Within each annual segment, they must be essentially unilateral. There is no cause of action for the anticipatory repudiation of such contracts. *See Beaman* v. *Pacific Mut. Life Ins. Co.*, 369 F.2d 653, 655-56 (4th Cir. 1966); *General American Tank Car Corp.* v. *Goree*, 296 F. 32, 36 (4th Cir.), *cert. denied*, 266 U.S. 610 (1924).

In the circumstances of this case, Schor and Herren are confronted with a dilemma: the contracts on which they rely are either within the debt clause and are therefore void, or they are contracts for continuing services outside the debt clause, for the breach of which they have incurred no damages and for the anticipatory repudiation of which they have no remedy. In either event, the result must be the same. Accordingly, we shall not undertake the task of constitutional analysis, fruitless in the circumstances here, which would be necessary to determine whether contracts of employment meet the requirements for the continuing-services exception.

The judgments will be reversed and final judgment will be entered here for the Board.

*Reversed and final judgment.*