CONCERNED RESIDENTS OF GLOUCESTER COUNTY, ET AL.

V.

BOARD OF SUPERVISORS OF GLOUCESTER COUNTY, ET AL.

Record No. 931411

November 4, 1994

Present: All the Justices

W. Todd Benson (Bondurant & Benson, on briefs), for appellants.

William G. Broaddus (John W. Daniel, II; Daniel K. Slone; Therence O. Pickett; McGuire, Woods, Battle & Boothe, on brief), for appellee Waste Management Disposal Services of Virginia, Inc.

(Thomas R. Robinett, County Attorney, on brief), for appellee Board of Supervisors of Gloucester County.

JUSTICE STEPHENSON delivered the opinion of the Court.

In this case, a local citizens' group and certain individuals challenge the validity of a contract between a county board of supervisors and a private corporation engaged in the waste disposal business.

## I

Concerned Residents of Gloucester County, Matthew James Owens, Jr., and Wendy L. Swan (collectively, Concerned Residents) filed a bill of complaint for declaratory and injunctive relief against the Board of Supervisors of Gloucester County (the Board) and Waste Management Disposal Services of Virginia, Inc. (Waste Management). Concerned Residents sought to have the trial court declare unconstitutional, unlawful, and invalid a certain contract entered into by the Board and Waste Manage-

ment (the Contract). The Contract and supporting documents were filed with and made a part of the bill of complaint. The Board and Waste Management demurred to the bill of complaint, contending that the Contract is valid.

The trial court sustained the demurrers and dismissed the bill of complaint with prejudice, holding that the Contract and its accompanying documents do not violate any constitutional provisions or statutes. Concerned Residents appeal.

## II

Prior to the Board's entering into the Contract, the County's existing landfill rapidly was filling, and the Board had insufficient funds to close the existing landfill and to open a new one in accordance with newly promulgated state regulations. Consequently, on November 20, 1992, the Board issued a request for proposal (RFP), seeking bids from private firms to construct and operate a new solid waste management facility within the County. Waste Management submitted a proposal and was awarded a contract to construct and operate a facility.

Consistent with the RFP, the Contract provides that the County shall acquire suitable property for the facility and that Waste Management will reimburse the County for the acquisition costs. The County retains ownership of the property and will lease the property to Waste Management for the term of the Contract, 20 years.

Waste Management will construct and operate a solid waste disposal facility on the property and will pay the County a "Guaranteed Annual Rent" of $50,000, which rent may be increased based on the tonnage of solid waste delivered to the facility. Waste Management also will pay the County up to $1.5 million for "use by the County in the closure of the County's Existing Landfill" and $75,000 annually for post-closure maintenance of the existing landfill and will permit the County and its residents to dispose of a specified quantity of waste at the new facility free of charge.

## III

Concerned Residents contend that the Contract is illegal, claiming that it (1) creates "debt," in violation of Article VII, § 10(b) of the Constitution of Virginia; (2) violates the Constitution's pro-

hibition against special legislation, contained in Article IV, § 14(18); and (3) constitutes a bartering away of legislative powers.

## A

■ At the outset, we note that the General Assembly has declared the public policy of Virginia respecting the collection and disposal of solid waste and has granted local governments extensive powers in the matter. Code § 15.1-28.01 provides, in pertinent part, as follows:

It has been and is continuing to be the policy of the Commonwealth of Virginia to authorize each county, city or town to displace or limit competition in the area of garbage, trash or refuse collection services and garbage, trash or refuse disposal services to provide for the health and safety of its citizens, to control disease, to prevent blight and other environmental degradation, to promote the generation of energy and the recovery of useful resources from garbage, trash and refuse, to protect limited natural resources for the benefit of its citizens, to limit noxious odors and unsightly garbage, trash and refuse and decay and to promote the general health and welfare by providing for adequate garbage, trash and refuse collection services and garbage, trash and refuse disposal services. Accordingly, the governing bodies of the counties, cities and towns of this Commonwealth are directed and authorized to exercise all powers regarding garbage, trash and refuse collection and garbage, trash and refuse disposal notwithstanding any anti-competitive effect.[1]

Additionally, Code § 15.1-28.02 states the following:

The governing body of any county or municipality is authorized to contract with any person, whether profit or nonprofit, for garbage and refuse pickup and disposal services in its respective jurisdiction and to enter into contracts relating to waste disposal facilities which recover energy or materials from garbage, trash and refuse. Such contracts may make

---

[1] Concerned Residents contend that Code § 15.1-28.01 is not applicable to Gloucester County. We think, however, that the above-quoted declaration of public policy applies to "each county, city or town" of this Commonwealth.

provision for among other things (i) the purchase by the county or municipality of all or a portion of the disposal capacity of a waste disposal facility located within or without the county or municipality for its present or future waste disposal requirements, (ii) the operation of such facility by the county or municipality, (iii) the delivery by or on behalf of the contracting county or municipality of specified quantities of garbage, trash and refuse, whether or not such county or municipality collect such garbage, trash and refuse, and the making of payments in respect of such quantities of garbage, trash and refuse, for such garbage, trash and refuse delivered, (iv) adjustments to payments made by the county or municipality in respect of inflation, changes in energy prices or residue disposal costs, taxes imposed upon the facility owner or operator, or other events beyond the control of the facility operator or owners, (v) the fixing and collection of fees, rates or charges for use of the disposal facility and for any product or service resulting from operation of the facility, and (vi) such other provision as is necessary for the safe and effective construction, maintenance or operation of such facility, whether or not such provision displaces competition in any market. Any such contract shall not be deemed to be a debt or gift of the counties and cities within the meaning of any law, charter provision or debt limitation. Nothing in the foregoing powers granted such counties and cities shall include the authority to pledge the full faith and credit of such local governments in violation of Article X, Section 10, Constitution of Virginia.

■■■ Where, as here, the General Assembly has authorized the County "to provide for the health and safety of its citizens . . . and to promote the general health and welfare by providing for adequate [waste] disposal services," Code § 15.1-28.01, action taken by the County in response thereto is a legislative act in the furtherance of the County's police powers. *See Tidewater Homebuilders* v. *City of Va. Beach*, 241 Va. 114, 118, 400 S.E.2d 523, 525 (1991). When a legislative body exercises its police powers, every possible presumption shall be indulged in favor of the validity of its legislative act. *Mumpower* v. *Housing Authority*, 176 Va. 426, 443, 11 S.E.2d 732, 738 (1940). Additionally, we

emphasize that, in deciding whether a legislative act is valid, a court is not concerned about whether the action is wise.

## B

Article VII, § 10(b) of the Constitution of Virginia provides, in pertinent part, as follows:

No debt shall be contracted by or on behalf of any county or district thereof or by or on behalf of any regional government or district thereof except by authority conferred by the General Assembly by general law. The General Assembly shall not authorize any such debt except [certain specific classes of indebtedness], unless in the general law authorizing the same, provision be made for submission to the qualified voters of the county or district thereof or the region or district thereof, as the case may be, for approval or rejection by a majority vote of the qualified voters voting in an election on the question of contracting such debt. Such approval shall be a prerequisite to contracting such debt.

Concerned Residents contend that the Contract is illegal because it binds future boards of supervisors to pay money to Waste Management, in violation of Article VII, § 10(b). In support of their contention, Concerned Residents focus upon three provisions in the Contract, *i.e.*, §§ 14.3(b), 11.4, and 11.22.

Section 14.3(b) provides, in pertinent part, as follows:

In the event the County terminates this Agreement for any reason, except as a result of [Waste Management's] Default without cure, the County shall pay [Waste Management], in addition to any other damages payable to [Waste Management], within one hundred eighty (180) days after such termination, the fair market value of the Property and all improvements thereon.

Concerned Residents assert that this provision of the Contract "requires payment to Waste Management by future Boards over the next twenty years in the event of a breach of contract." We do not think § 14.3(b) of the Contract constitutes "debt" within the meaning of Article VII, § 10(b) of the Constitution. Pursuant to § 14.3(b), the County's obligation to pay

Waste Management arises only in the event the County unilaterally terminates the Contract, a condition that may never occur. This Contract provision, therefore, merely specifies a remedy for a breach of contract. Consequently, the provision does not constitute "debt" within the meaning of § 10(b). *See Fairfax-Falls Church v. Herren*, 230 Va. 390, 393-94, 337 S.E.2d 741, 743 (1985).

Next, Concerned Residents direct our attention to §§ 11.4 and 11.22 of the Contract. Section 11.4 authorizes Waste Management to impose future charges upon the County in the event the County adopts any ordinance that would increase Waste Management's costs of operating the facility. The section provides that the costs imposed on Waste Management in complying with any such ordinance "shall be credited against the Rent to be paid." If the costs exceed the rent, Waste Management "shall have the right at [its] sole option . . . to charge a Tipping Fee for [the disposal of residential waste] in an amount sufficient to cover such excess."

Section 11.22 of the Contract provides that, in the event certain hazardous waste is delivered for disposal and the owner of the waste cannot be identified, "the cost of disposing of such waste shall be shared between the County and [Waste Management], with the County paying 25% of such cost and [Waste Management] paying 75% of such cost." The County's share of the cost "shall be set off against future Rent due to the County."

In *Fairfax County* v. *County Executive*, 210 Va. 253, 260, 169 S.E.2d 556, 561 (1969) (*Massey* I), we stated the well-recognized service contract doctrine:

> [A] continuing service contract, for which the municipality agrees to pay in installments as the service is furnished, does not create a present debt for the aggregate amount of all the installments throughout the term of the contract within the meaning of constitutional limitations of municipal indebtedness.

The doctrine applies not only to contracts entered into by municipal corporations but also to contracts entered into by a county. *Fairfax County* v. *County Executive*, 210 Va. 680, 683, 173 S.E.2d 869, 871 (1970) (*Massey* II).

Relying upon this doctrine, in *Massey* II, we upheld a contract for financial participation in the construction and operation

of a transit system. *Id.* at 685, 173 S.E.2d at 873. Specifically, we stated:

> The record . . . shows that the agreements of the County and City with the [Transit] Authority are for an essential public service for the benefit of their residents; that the obligations of the County and City to pay for the transit service are conditioned upon the service being rendered; and that their obligations are to pay over a period of years in periodic annual installments as service is rendered.

*Id.*

In the present case, the County's obligation to pay additional costs to Waste Management under §§ 11.4 and 11.22 of the Contract do not arise, if ever, until the services have been rendered by Waste Management. Therefore, the challenged provisions do not constitute "debt" within the meaning of Article VII, § 10(b) of the Constitution.[2]

## C

Concerned Residents contend that the Contract also violates the constitutional prohibition against special privileges. Their attack focuses upon §§ 2.2 and 9.3 of the Contract.

Section 2.2, the exclusivity provision of the Contract, provides as follows:

> The County and [Waste Management] agree that from the date of this Agreement until the expiration of the Term of this Agreement, the Facility is intended to be the only landfill or solid waste management facility located in the County of Gloucester, Virginia and that the exclusivity of the Facility is a major consideration for this Agreement. The County agrees to use its best efforts to the maximum extent permitted by law to maintain such exclusivity with [Waste Management] until the end of the Term.

---

[2] In support of their position, the Board and Waste Management rely, in part, upon the following provision in Code § 15.1-28.02: "Any [waste disposal] contract shall not be deemed to be a debt . . . within the meaning of any law . . . or debt limitation." In reaching our conclusion that the Contract does not create debt within the meaning of the Constitution, we do not rely upon or express an opinion regarding the effect of this Code provision.

Section 9.3, relating to taxes and assessments, provides as follows:

> [Waste Management] acknowledges that it will be subject to the County's ordinance providing for taxes on personal property, machinery and tools ("Personal Property Taxes") and the County's ordinance providing for taxes for [Waste Management's] business and professional operating license ("Business License Taxes") and agrees to pay all applicable taxes in accordance with such ordinances. The County represents and warrants to [Waste Management] that the Property is not subject to any real estate taxes under applicable statutes and ordinances and that there are no other taxes in effect as [of] the date of this Agreement which would apply to the revenues, earnings or operation of the Facility. During the Term, if the County assesses, imposes or adopts (i) any real estate taxes on the fee or leasehold interests in the Property, (ii) any taxes on the personal property used in the operation of the Facility other than the Personal Property Taxes, (iii) any taxes on the revenues from the Facility or (iv) any other tax, fee or other charge upon the revenues, earnings or operation of the Facility or to landfills other than the Business License Taxes or other than taxes uniformly applicable to all businesses in the County of Gloucester, or in the event [Waste Management] is required to pay a state mandated host fee which is, directly or indirectly, paid to the County, the County shall credit the amount of such tax, fee or charge against the Rent to be paid under this Agreement. If the total amount of all such taxes, fees or charges and the increased costs described in §11.4 of this Agreement exceeds the total Rent which would be due if such taxes, fees or charges had not been imposed or such costs incurred, [Waste Management] shall have the right, at [Waste Management's] sole option, to terminate this Agreement or to charge a Tipping Fee on Solid Waste received from the County pursuant to §11 hereof in an amount sufficient to cover such excess.

Article IV, § 14 of the Constitution provides, in pertinent part, that "[t]he General Assembly shall not enact any local, special, or private law . . . [g]ranting to any private corporation, association,

or individual any special or exclusive right, privilege, or immunity." Article IV, § 15 provides, in pertinent part, that "[n]o private corporation, association, or individual shall be specially exempted from the operation of any general law, nor shall a general law's operation be suspended for the benefit of any private corporation, association, or individual."

The thrust of Concerned Residents' argument is stated as follows:

Because the Agreement between the Board and Waste Management waives taxes, it deters the free exercise of the police power of future Boards for the benefit of Waste Management, and encourages the Board to prevent legitimate competition for the benefit of Waste Management, the Agreement constitutes special laws in violation of the Virginia Constitution.

The constitutional prohibitions against special laws do not forbid legislative classifications. *Holly Hill Farm Corp.* v. *Rowe*, 241 Va. 425, 430, 404 S.E.2d 48, 50 (1991). Legislative classifications, however, "must be natural and reasonable, and appropriate to the occasion." *Martin's Ex'rs* v. *Commonwealth*, 126 Va. 603, 612, 102 S.E. 77, 80 (1920). Therefore, a classification will survive a special-laws constitutional challenge if it bears "a reasonable and substantial relation to the object sought to be accomplished by the legislation." *Mandell* v. *Haddon*, 202 Va. 979, 991, 121 S.E.2d 516, 525 (1961). The reasonableness of and necessity for a classification are primarily issues for a legislature, and, "[i]f any state of facts can be reasonably conceived that would sustain [the classification], that state of facts at the time the law was enacted must be assumed." *Martin's Ex'rs*, 126 Va. at 612-13, 102 S.E. at 80. The burden is upon the assailing party to show that a classification is unreasonable and arbitrary. *Id.* at 614, 102 S.E. at 81.

The safe and proper disposal of garbage, trash, and refuse is a serious problem for the Commonwealth and her localities. Indeed, the problem is so serious that the General Assembly has directed and authorized local governing bodies "to exercise all powers" regarding the collection and disposal of such waste "notwithstanding any anti-competitive effect." Code § 15.1-28.01. To that end, a local governing body is authorized to enter into a contract relating

to waste disposal facilities. Code § 15.1-28.02. Such contract may make "such . . . provision as is necessary for the safe and effective construction, maintenance or operation of [a disposal] facility, whether or not such provision displaces competition in any market." *Id.*

When the exclusivity provision of the Contract is viewed in light of the public policy enunciated by the General Assembly and the object sought to be accomplished by the County, we cannot say that the provision is unreasonable and arbitrary. To the contrary, we think the provision is natural and reasonable in the circumstances of the present case.

We also think that the Contract provision relating to taxes and assessments is not unreasonable and arbitrary. The provision acknowledges that the property, because it is owned by the County, is not subject to real estate taxes and that the County may impose additional taxes on the facility. Contrary to Concerned Residents' claim, the Contract does not waive taxes. The Contract simply provides that, if the County should impose real estate taxes on the County-owned land, or if other taxes should be assessed in addition to those presently imposed, payment of such taxes would result in a credit against Waste Management's obligation to pay rent. Such a credit is valid if the amount of taxes the County forgoes is fair consideration for the services received. *City of Richmond* v. *Virginia R. & P. Co.*, 124 Va. 529, 541, 98 S.E. 691, 695 (1919); *accord Bristol* v. *Dominion Nat. Bank*, 153 Va. 71, 77-78, 149 S.E. 632, 634 (1929).

We hold, therefore, that the Contract does not violate the constitutional prohibition against special laws.

### D

Concerned Residents also contend that, in executing the Contract, the County has "bartered away" its legislative powers. Concerned Residents' core argument is that the Contract "binds future Boards, thus interfering with the ability of future Boards to exercise their legislative discretion." The Contract, they assert, "restricts unconstitutionally the future prerogatives of boards of supervisors."

It is firmly established that "a county is capable of contracting and has the power to make all contracts which are proper and reasonably necessary to the execution of its corporate objects and purposes." *South Hampton Apts.* v. *Elizabeth City Co.*, 185

Va. 67, 79, 37 S.E.2d 841, 847 (1946). Additionally, "[g]eneral rules of the law of contracts are applicable in determining the validity of a contract to which a county is a party." *Id.* at 80, 37 S.E.2d at 847.

In the present case, as previously noted, the General Assembly has authorized the County to contract for the collection and disposal of solid waste. Code §§ 15.1-28.01 and -28.02. The legislative intent could not be more clear. Pursuant to this grant of authority, the County has entered into a 20-year lease with Waste Management.

Code § 15.1-261.1 authorizes a county to execute a lease after a public hearing and to prescribe the "terms and provisions" of the lease. When the General Assembly has made an express grant of power to a county without prescribing the method of execution, the county is permitted to utilize its discretionary authority in exercising the granted power, provided the selected method is reasonable. *Commonwealth* v. *Arlington County Bd.*, 217 Va. 558, 574, 232 S.E.2d 30, 40 (1977); *Kirkham* v. *Russell*, 76 Va. 956, 961 (1882).

In the present case, within the framework of the powers granted to the County, we find nothing in the method selected by the County in exercising the granted power that is unreasonable or constitutes a bartering away of the County's legislative powers.

## IV

In sum, we hold that the Contract does not (1) create "debt," in violation of Article VII, § 10(b) of the Constitution; (2) violate the Constitution's prohibition against special legislation; or (3) constitute an unlawful bartering away of legislative powers.[3] Accordingly, the trial court's judgment will be affirmed.

*Affirmed.*

---

[3] Concerned Residents also claim that the Contract authorizes the County to alienate County property, in violation of the public hearing requirement of Code § 15.1-262. The Contract, however, provides that the County cannot act upon Waste Management's purchase option without first "undertaking all necessary notices and public hearings required for such action." The County has not undertaken to sell the property, and, therefore, Concerned Residents' claim is not ripe for consideration.