WIDENER, Circuit Judge,
concurring:
I concur in all of the opinion of the court except Part IV.A, and I concur in the result that Part IV.A obtains.
I.
The pertinent part of the Code section involved is not complicated:
Any locality is authorized to contract with any person, whether profit or nonprofit, for garbage and refuse pickup and disposal services in its locality and to enter into contracts relating to waste disposal facilities which recover energy or materials from garbage, trash and refuse.
Virginia Code § 15.2-932 (Michie 1997).
As to Part IV.A and the statute involved here, it is obvious to me that a more reasonable reading of the plain language of the statute would confine the contracting authority to “its locality” in accord with the position taken by the defendants under the Dillon’s rule construction required in Virginia when construing statutes conferring power upon political subdivisions. That rule, as construed, is that “[a]ny fair, reasonable doubt concerning the existence of the power is resolved by the courts against the corporation and the power is denied,” as noted in the majority opinion, slip at 331-32. Richmond v. Bd. of Sup’rs of Henrico County, 199 Va. 679, 101 S.E.2d 641, 645 (1958). But this Code section has been construed by the Virginia Supreme Court in Concerned Residents v. Bd. of Sup’rs of Gloucester County, 248 Va. 488, 449 S.E.2d 787 (1994) in the con *350 text of trash collection, as here: “action taken by the county in response thereto is a legislative act in the furtherance of the county’s police powers.” 449 S.E.2d at 790. “When a legislative body [so] exercises its police powers every possible presumption shall be indulged in favor of the validity of its legislative act.” 449 S.E.2d at 790.
In the case at hand there is no doubt that the trash facility involved here undertook, with the agreement and consent of the county, the reception of trash from outside Virginia. This undertaking was just such an exercise of police power as the Virginia Court referred to in Concerned, Residents. When that is taken into account, in my opinion, taking the out-of-state trash into the Virginia trash dump was not ultra vires under the Dillon rule. In this construction of the statute, I am supported by Virginia Code § 15.2-937(B), a part of the same statutory scheme as § 15.2-932, which refers to “solid waste transported from any jurisdiction,” an obvious inference that the importation of foreign trash is contemplated by the statute.
The powers of political subdivisions in Virginia are quite limited under Dillon’s rule, as noted by the majority. In addition to powers granted in express words, or incident to and necessary, or fairly implied, by such words, they are limited to “those essential to the accomplishment of the declared objects and purposes of the corporation-not simply convenient but indispensable.” Board of Supervisors of Henrico Co., 101 S.E.2d at 645; Cline v. Robb, 548 F.Supp. 128, 131 n. 7 (E.D.Va.1982) (three-judge court). The Commonwealth can thus limit the power of political subdivisions to contract with waste disposal facilities of any kind, but the Commonwealth may not authorize a political subdivision to contract with such waste disposal facilities in violation of the Constitution, as here.
There is no reason apparent why Virginia may not permit her political subdivisions to operate waste disposal facilities for their own benefit, either performing the operation itself or by contract. Or Virginia may do the same. In that event, the Commonwealth or the political subdivision disposing of local waste would act under the market participant exception to the Dormant Commerce Clause. See Reeves, Inc. v. Stake, 447 U.S. 429, 100 S.Ct. 2271, 65 L.Ed.2d 244 (1980) (holding that a state-owned concrete plant could choose to sell only to state residents); Nat’l Solid Waste Mgmt. Assn. v. Williams, 146 F.3d 595 (8th Cir.1998); cf. Med. Waste Assoc. v. Mayor and City Council of Baltimore, 966 F.2d 148 (4th Cir.1992). But if the Commonwealth chooses to permit the political subdivisions to use waste disposal as a revenue source by the importation of foreign waste, it must be done within the confínes of the Constitution. Language authorizing political subdivisions to act as market participants might be easily drafted, but such has not been accomplished here.
II.
I do not rely on the rather flamboyant statements of the political authorities in arriving at my concurrence.