590 F.Supp. 385 (1984)
The METROPOLITAN SAINT LOUIS SEWER DISTRICT, Plaintiff,
v.
William D. RUCKELSHAUS Administrator of the United States Environmental Protection Agency, et al., Defendants.
No. 83-971C(C).
United States District Court, E.D. Missouri, E.D.
February 8, 1984.
*386 Don Stohr, Charles Kaiser, St. Louis, Mo., for plaintiff.
Jay Daughery, Jefferson City, Mo., for all defendants except EPA.
Dean Dunsmore, Washington, D.C., for defendants.

MEMORANDUM
MEREDITH, District Judge.
This matter is before the court on federal defendant's (William D. Ruckelshaus, Administrator of the United States Environmental Protection Agency) motion to dismiss. Plaintiff's complaint seeks (1) a declaration of the rights of the parties with respect to the grant agreements, (2) a declaration that the Hancock Amendment, Article 10, § 22 of the Missouri State Constitution is unconstitutional in so far as it applies to the user charge system required by the contract between plaintiff and defendants because it violates the federal constitution, (3) to enjoin the Missouri State defendants from enforcing the Hancock Amendment with respect to MSD's contractual obligations to adopt a user charge system, (4) to enjoin the EPA and Missouri State defendants from withholding funds due MSD, (5) to award plaintiff its attorney's fees and costs. For the reasons stated forth below, the complaint will be dismissed in its entirety.

*387 Facts

This action is filed by the Metropolitan Saint Louis Sewer District (MSD) challenging the validity of the Hancock Amendment as it relates to a federal requirement to impose a system of user charges as a condition of federal grant funding under 33 U.S.C. § 1251 et seq. Plaintiff states it intends to enact the user charge system as part of its contractual obligations under 33 U.S.C. § 1284(b)(1).
In 1972, Congress amended the Federal Water Pollution Control Act, 33 U.S.C. § 1251, to provide a program at both state and federal level to improve the quality of the nation's water. The administrator of the EPA is authorized to provide construction grant funds to assist local governments in the construction of sewage treatment plants. This authority allows EPA to award 75 percent of the eligible construction costs of sewage treatment facilities to a successful applicant upon demonstration of satisfaction of minimal terms and conditions described by regulation. Recipients of federal grants are required to adopt a system of user charges to pay for the operation and maintenance of the federally funded facility, and the administrator shall publish guidelines for the payment of waste treatment costs by recipients of waste treatment services, including rates of user charges typical of various treatment works. The actual rate charges to be assessed are established by the grantee, with EPA approval.
MSD is a municipal corporation and a political subdivision of the State of Missouri. MSD has operated a system of sewage treatment facilities in the Saint Louis metropolitan area for a number of years. Grant funds have been awarded by EPA to MSD for the improvement of existing facilities and the construction of the facilities.
The Clean Water Act, 33 U.S.C. § 1284(b)(1), required that all recipients of federal grant funds agree to adopt a system of user charges to pay for the operation and maintenance including replacement of the federally funded facilities. Each of the grant agreements between EPA and MSD contains a provision in which MSD has contractually agreed to adopt an approved user charge system. MSD admits that its present user charge system does not comply with the requirements of the Clean Water Act.
MSD has prepared a proposed ordinance to impose a user charge system upon users of sewer services within its territorial jurisdiction. MSD intends to enact the ordinance and commence collection of user charges without first submitting the issue to election. Until MSD actually adopts a user charge system (by vote or not) as required by 33 U.S.C. § 1284(b)(1), EPA and the State defendants are withholding and will continue to withhold further payment of funds due MSD under the existing grant agreements.

Abstention
The question has been raised whether MSD lacks the power to make a contract with the EPA establishing user fees. If MSD could not legally make or enter into the contract which is the basis of this suit, then the contract is void ab initio, and there could be no impairment of contract. This question is now before the Missouri State court, in Wilhemina D. Roberts v. Metropolitan Saint Louis Sewer District, Circuit Court of the City of Saint Louis, No. 834-0268 (filed 26 August 1983). The answer to such question may cause the federal constitutional issue to be moot.
Further, that case very well may resolve the issue of whether the Hancock Amendment precludes plaintiff's particular suggested implementation of the grant agreement required user charge system. Indeed, the State courts may construe the Hancock Amendment in such a way as to avoid or modify the federal constitutional question. Compare Oswald v. City of Blue Springs, 635 S.W.2d 332 (Mo. En Banc 1982) (state political sub-division operating water treatment plant has authority to raise sewage rates) with Roberts v. McNary, 636 S.W.2d 332, 336 (Mo. En Banc 1982) (voters must approve rate increases).
*388 There are two unanswered state law questions which have yet to be decided and which are now pending before the Missouri court system. Abstention of federal courts is appropriate in a case like this presenting a federal constitutional issue which might be mooted in a state court determination of state law. Colorado River Water Conservation District v. United States of America, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); National City Lines, Inc. v. LLC Corp., 687 F.2d 1122, 1126 (8th Cir.1982).
Therefore, this case will be dismissed to allow state court determination of state law, since such determination may avoid the federal constitutional issue presented herein.

No Live Case or Controversy
The only relief plaintiff requests against the federal defendant EPA is to enjoin the EPA from withholding funds due plaintiff. Plaintiff admits that its contract with the EPA requires it to adopt a system of user charges which complies with the Clean Water Act. Plaintiff admits that its present user charge system does not comply with these requirements. Plaintiff admits that the EPA is authorized under the contract to rescind the grant agreements, to withhold further payments due and to recover payments already made. Plaintiff and EPA agree that EPA may properly withhold funds. Therefore, plaintiff has failed to allege a dispute between itself and EPA, and has failed to state a claim upon which relief can be granted.

No Subject Matter Jurisdiction
The only relief sought against EPA is to require the EPA to issue funds due plaintiff according to the contract. Plaintiff does seek relief in addition to determining monetary liability of the EPA. However, the declaratory relief sought, with regard to holding the Hancock Amendment unconstitutional as applied to the specific issue of the user charge system required by the contractual obligations imposed by the Clean Water Act, is not directed against the federal defendant EPA. Thus, that part of State of Minnesota v. Heckler, 718 F.2d 852, 858 (8th Cir.1983), which states that if the relief sought has significant prospective effect or value apart from merely determining monetary liability of the government, then the district court may assume jurisdiction over the non-monetary claims, is inapplicable. Clearly, the only relief sought against EPA is a monetary award due MSD under the contract. Jurisdiction for a money award claim is exclusively in the United States Claims Court. State v. Minnesota, 718 F.2d at 857. Plaintiff does not seek to have the EPA-MSD contract terms relating to user fees declared unconstitutional. If so, such prospective determination would involve EPA. A decision of whether the Hancock Amendment impermissibly prevents MSD from carrying out a contract does not involve equitable relief against the federal government as required in State of Minnesota. The only relief sought against EPA being a declaration concerning contract funds, the district court lacks jurisdiction. 28 U.S.C. § 1491(a)(1).
Plaintiff cites State Highway Commission of Missouri v. Volpe, 479 F.2d 1099 (8th Cir.1973), for the proposition that an action against a federal officer seeking disbursement of appropriated funds is within the district court's federal question jurisdiction under 28 U.S.C. § 1331(a). However, in Volpe, the funds were withheld because the Director of the Budget wanted to control inflationary pressures. There was no question that the funds were apportioned. In the case at bar, as noted above, it is clear that while the funds are available if certain requirements are met, MSD has no right to them until it meets its contract obligations. As MSD admits, it has not met those contract obligations. Thus the question is not whether EPA can impound funds (a federal question under § 1331(a)), but whether under the contract it has to pay them (§ 1491(a) jurisdiction). First, plaintiff admits EPA does not have to pay. Second, this contract question is within the exclusive jurisdiction of the Court of *389 Claims. See Polos v. United States of America, 556 F.2d 903, 905 (8th Cir.1977).
For the above reasons, the case properly may be dismissed as to EPA.

Contract Impairment
Even were this court not to defer to the Missouri State courts, as stated above, plaintiff fails to state a claim upon which relief can be granted as to all defendants. There has been no impairment of contract. As a matter of law, this court cannot declare the Hancock Amendment to be unconstitutional in this particular case. Therefore the case properly may be dismissed.
The contract clause of the federal Constitution does not bar all governmental action affecting profitability of private contracts, even when the effect of such action is to diminish the likelihood that one or more of the parties will keep their bargain. Rather, the clause forbids an alteration in the relative position to two parties to an existing contract. South Terminal Corp. v. Environmental Protection Agency, 504 F.2d 646, 680 (1st Cir.1974).
The position of MSD and EPA is the same before as after the Hancock Amendment: while EPA is not assured of the promised unilateral action on the part of MSD to raise the user fees, the obligations remain the same, the Amendment does not let MSD out of its contract, and EPA was not assured of MSD's action before the Amendment. User fees are still a valid part of the contract, and the Amendment does not prohibit them; the Amendment merely changes the manner in which MSD may legally meet its obligations. Should the voters pass the fees required, EPA funding may be forthcoming. EPA still retains all its rights under the contract. If MSD does not fulfill its requirements, EPA may get back its funding which it has already advanced, as set out in the contract.
In order to have a constitutionally protected impairment, the challenged law must act on the contract itself as distinguished from the property which is the subject of the contract. Northwestern Nat. Life Ins. Co. v. Jordan, 447 F.Supp. 856, 860 (D.Nev.1978) (citations omitted). The Hancock Amendment does not act on the sewage contract itself; it acts only on property which is part of the subject matter of the contract  public funding through user fees. Thus there is no constitutionally protected impairment.
A law is not impermissible merely because an object of the regulation is a party to some contracts. South Terminal, 504 F.2d at 680. Even if MSD could have unilaterally set the user fee before the Amendment, it may not do so now. Thus the Amendment affects the way in which MSD can meet its contractual obligation. However, this interference does not rise to the level of contract impairment.
A preliminary question under contract clause analysis is whether the legislative action impaired or changed a specific contractual obligation. City of Atlanta v. Metropolitan Atlanta Rap. Trans., 636 F.2d 1084, 1091 (5th Cir.1981). In the City of Atlanta case, the court held that a requirement that no more than fifty percent of one percent sales tax revenue could be used to subsidize operating expenses did not impair pre-existing obligations of the parties. The Hancock Amendment does not prevent user fees from being enacted; it does not prohibit MSD from living up to its agreement; it does not change any of MSD's contractual obligations. It does proscribe the manner in which MSD can legally set user fees; it does increase the possibility that MSD will not be able to live up to its agreement. This is not, however, a change of obligations between the parties. The Hancock Amendment does not prevent MSD from raising its charges; the Amendment merely alters the procedure for raising charges. Temptation or the mere possibility that the law in question will cause the parties to abrogate the contract is not the equivalent of coercion  contract impairment. City of New Brunswick v. Borough of Milltown, 686 F.2d 120, 134 (3rd Cir.1982).
*390 Further, the parties have not supplied the Court with a copy of the contract in question. As in the City of Atlanta case, it may contain a clause that MSD would "comply with all pertinent laws now in existence or hereinafter enacted which relate to its budget or budgeting procedure." 636 F.2d at 1092. Even if such a clause is not set out, the contract is viewed as containing such a clause. The reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order. City of El Paso v. Simmons, 379 U.S. 497, 508, 85 S.Ct. 577, 583, 13 L.Ed.2d 446 (1965); Northwestern Nat. Life Ins. Co. v. Jordan, 447 F.Supp. 856, 861 (D.Nev.1978). Indeed, the U.S. Supreme Court has held that the Contract Clause is qualified by the measure of control which the State retains over remedial processes as well as the authority the state has to safeguard the vital interests of its people. "It does not matter that legislation appropriate to that end has the result of modifying or abrogating contracts already in effect." City of El Paso v. Simmons, 379 U.S. 497, 508, 85 S.Ct. 577, 584, 13 L.Ed.2d 446 (1965). See also for example, Energy Reserves Group, Inc. v. Kansas Power and Light Co., 459 U.S. 400, 103 S.Ct. 697, 704-10, 74 L.Ed.2d 569 (1983), citing El Paso with approval, for the proposition that there would be no impairment of contract rights in such a case, particularly in the context of the pervasive regulation of public utilities.
In passing the Hancock Amendment, Missouri citizens felt it necessary to gain control of taxes and fees passed in the state. See Wenzlaff v. Lawton, 653 S.W.2d 215, 217 (Mo. En Banc 1983); Roberts v. McNary, 636 S.W.2d 332, 337 (Mo. En Banc 1982). The Supreme Court held that "in this domain of the reserve power of a State we must respect the sound discretion on the part of the [state] legislature in determining what is and what is not necessary." City of El Paso, 379 U.S. at 508-509, 85 S.Ct. at 583-584.
Further, the purpose in passing the Hancock Amendment was not to impair any contract, but to insure local taxes were approved by local citizens. Wenzlaff, 653 S.W.2d at 217. It is the motive, the policy, the objective, that must characterize the legislative act, to affect it with the imputation of violating the obligation of contracts. City of El Paso, 379 U.S. at 509, 85 S.Ct. at 584. Thus, the Amendment does not violate the contract clause.
The State certainly has the right to set fees and rates chargeable, or to decide how these are to be assessed. No contract can take away the right of the sovereign over passage and increases in taxes. Here, the matter in the contract complained of is how state and local taxes are raised. This subject matter is one reserved to the state and the citizens thereof. U.S. Const. amend. X. Thus it was held in Home Building and Loan Association v. Blaisdell, 290 U.S. 398, 437-38, 54 S.Ct. 231, 239-40, 78 L.Ed. 413 (1934) (citing in part Mr. Justice Holmes in Hudson Water Co. v. McCarter, 209 U.S. 349, 28 S.Ct. 529, 52 L.Ed. 828 [1908]) (cited with approval in City of El Paso v. Simmons, 379 U.S. 497, 85 S.Ct. 577, 13 L.Ed.2d 446 (1965)):
"One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them. The contract will carry with it the infirmity of the subject matter." The general authority of the legislature to regulate, and thus to modify, the rates charged by public service corporations affords another illustration. Stone v. Farmers Loan and Trust Co., 116 U.S. 307, 325, 326 [6 S.Ct. 334, 341, 342, 29 L.Ed. 636 (1886)]. In Union Dry Goods Co. v. Georgia Public Service Corp., 248 U.S. 372 [39 S.Ct. 117, 62 L.Ed. 309 (1919)], a statute fixing reasonable rates, to be charged by a corporation for supplying electricity to the inhabitants of a city, superseded lower rates which had been agreed upon by a contract previously made for a definite term between the company and a consumer. The validity of the statute was sustained.
*391 Also see Veix v. Sixth Ward Association, 310 U.S. 32, 38-89, 60 S.Ct. 792, 794-795, 84 L.Ed. 1061 (1940). Authority is retained by the State over contracts to safeguard the vital interests of its people. Contracts are made subject to this paramount authority which extends to economic questions as well: Utility rate contracts give way to this power.
In Middlesex County Utilities Authority v. Borough of Sayreville, 690 F.2d 358 (3rd Cir.1982) cert. den., 460 U.S. 1023, 103 S.Ct. 1273, 75 L.Ed.2d 495 (1983), the question was whether the EPA's withholding of funds from two cities because one of the cities would not adopt a user fee was an unconstitutional impairment of the waste disposal contract between the two cities. The Clean Water Act, which controlled the EPA's action, did not contain any provision abrogating the contracts between the two cities; thus there was no impairment of contract. Likewise with MSD and EPA, the Hancock Amendment does not abrogate the contract. In Middlesex, the court held that the court could not force EPA to provide the funds if the city did not fulfill its contract obligations. As here, the contract provided that if there were no user fee, there would be no funds from EPA; EPA could receive back the funds already advanced. Thus, the remedy is not to force a user fee if one is not voted in, but to reestablish the status quo between the parties as was done in Middlesex.
In summary, the plaintiff MSD has not suffered any loss. In order for a legislative action to impair a contract, the challenged action of the legislature must have altered the existing contract in such a manner as to impose a loss on the party claiming the impairment. Baker v. Baltimore County, Maryland, 487 F.Supp. 461, 467 (D.Md.1980).
The contract was not altered. The contract does not require that MSD pass user fees in contravention to State law. The contract merely requires that MSD adopt an approved user charge system. The requirements of user charges, as set out in 33 U.S.C. § 1284(b), do not state whether the fees may be passed by voters. Indeed, whether the fees are passed by voters or by the district itself is immaterial to the purpose of the requirement: to assure that each recipient of services will pay its share. 33 U.S.C. § 1284(b)(1). To require a vote of taxpayers would not obstruct this purpose. Since the contract as evidenced in the Clean Water Act itself, neither requires nor prohibits voter approval of fees (only requiring that an acceptable system of charges be adopted, not determining the manner in which it be adopted), the passage of the Hancock Amendment (requiring that fees be adopted via voter approval) does not alter the contract or any terms thereof in any way. Therefore, plaintiffs have failed to state a cause of action.