**WASTE MANAGEMENT HOLDINGS, INC., et al., Plaintiffs,**

v.

**James S. GILMORE, III, et al., Defendants.**

**Civil Action No. 3:99CV425.**

United States District Court, E.D. Virginia, Richmond Division.

Aug. 30, 1999.

Robert Lawrence Bronston, Mayer, Brown & Platt, Washington, DC, Kenneth S. Geller, Evan M. Tager, Mayer, Brown & Platt, Washington, DC, for Waste Management Holdings, Inc. ·

Shawn Alan Copeland, Hunton & Williams, Richmond, VA, John Early Holloway, Hunton & Williams, Norfolk, VA, for Hale Intermodal Marine Company.

Anthony F. Troy, Mays & Valentine, Richmond, VA, James S. Crockett, Jr., Mays & Valentine, Richmond, VA, for Weanack Land Limited Partners.

B. Randolph Boyd, Randolph, Boyd, Cherry & Vaughn, Richmond, VA, for Charles City County.

Shawn Alan Copeland, Hunton & Williams, Richmond, VA, David Alan Rudlin, Hunton & Williams, Richmond, VA, Timothy George Hayes, Hunton & Williams, Richmond, VA, Meade Addison Spotts, Spotts, Smith, Fain & Rawls, Richmond, VA, Jason S. Thomas, Hunton & Williams, Raleigh, NC, for Brunswick Waste Management Facility, L.L.C.

Deborah Love Feild, Office of the Attorney General, Richmond, VA, Ellen Firsching Brown, Attorney General of Virginia, Richmond, VA, Stewart Todd Leeth, Assistant Attorney General, Richmond, VA, William Eugene Thro, Office of the Attorney General, Commonwealth of Virginia, Richmond, VA, for James S. Gilmore, III, John Paul Woodley, Jr., Dennis Treacy, Jr.

Meade Addison Spotts, Spotts, Smith, Fain & Rawls, Richmond, VA, Hugh McCoy Fain, III, Spotts, Smith, Fain & Buis, P.C., Richmond, VA, for The National Solid Wastes Management Association.

Hugh McCoy Fain, III, Spotts, Smith, Fain & Rawls, Richmond, VA, Meade Addison Spotts, Spotts, Smith, Fain & Rawls, Richmond, VA, John H. Turner, BFI Waste Systems of North America, Inc., for BFI Waste Systems of North America, Inc.

### MEMORANDUM OPINION

SPENCER, District Judge.

This matter is before the Court on Defendants' ("the Commonwealth" or "Virginia") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated herein, the Court DENIES the motion, except as it relates to Plaintiffs' Contract Clause claims (Waste Management Complaint, Counts II, IV, and VIII; Brunswick Complaint, Count VI).

## I. BACKGROUND

This is a suit for declaratory judgment and to enjoin the enforcement of several recently enacted Virginia statutes aimed at curtailing the flow of out-of-state municipal solid waste into the Commonwealth.[1] Plaintiffs contend that the new laws violate the Commerce, Contracts, Supremacy, and Equal Protection clauses of the United States Constitution. In an apparent effort to recover attorneys' fees pursuant to 42 U.S.C. § 1988, they have sought relief under 42 U.S.C. § 1983.

The Commonwealth has moved to dismiss Plaintiffs Complaints[2] in their entirety on two grounds: first, that Plaintiffs lack standing to challenge the disputed laws. because Virginia's counties had no authority to enter into the "host agreements" that "form the basis of this litigation" (Defs' Mem. in Supp. at 4), and second, that the suit is barred by the Eleventh Amendment and the doctrine of sovereign immunity. In addition, the Commonwealth has separately targeted each of Plaintiffs' individual constitutional claims. Finally, the Commonwealth argues that Charles City County must be dismissed as a plaintiff, because it lacks standing to sue its creator.

## II. RULE 12(B)(6) STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of a claim on the ground that it fails to state a claim upon which relief can be granted. When considering such a motion, a court must presume that all factual allegations in the complaint are true, and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Martin Marietta v. International Telecommunications Satellite Org.*, 991 F.2d 94,97 (4th Cir.1992). No claim should be dismissed unless it appears beyond a doubt that the plaintiff could not recover under any set of facts which could be proven. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Labram v. Havel*, 43 F.3d 918, 920 (4th Cir.1995).

## III. DISCUSSION

A. *The Commonwealth's Contention that Plaintiffs Lack Standing Because Virginia Counties Lack Authority to Enter Into the "Host Agreements".*

■ As detailed in both Complaints, each of the seven large regional landfills likely to be affected by the disputed statutes is privately operated under a voluntary agreement between the "host" county and the waste disposal company that operates the landfill. (Waste Management Complaint ¶ 16, Brunswick Complaint ¶ 16.) Pursuant to these "host agreements," the waste disposal companies constructed the regional landfills, pay the host counties a fee based on the volume of waste disposed, and perform certain services for the host communities, such as free waste disposal and closure of substandard landfills. (Waste Management Complaint ¶ 18, Brunswick Complaint ¶ 16.) Each of the landfills was built with the expectation that, in order to meet its revenue needs and provide a reasonable return on investment, it would accept substantial quantities of out-of-state municipal solid waste. (*Id.*)

The Commonwealth argues that Virginia's counties have no authority "to operate or contract for the operation of a municipal landfill for-profit that accepts out-of-state waste." (Defs' Mem. in Supp. at 4.) Accordingly, "these host agreements and the Counties' actions with regard to acceptance of interstate waste at these municipal landfills are *ultra vires* and unlawful." (*Id.* at 5.) Since the host agree-

---

1. The factual background is set forth fully in the Court's Memorandum Opinion on Plaintiffs' Motion for a Preliminary Injunction. *Waste Management Holdings, Inc. v. Gilmore*, 64 F.Supp.2d 523 (E.D.Va.1999).

2. Two complaints were filed against the Commonwealth before this action was consolidated, one by Waste Management Holdings, Inc. ("Waste Management"), et al., the other by Brunswick Waste Management, L.L.C. ("Brunswick").

ments "form the basis of this litigation" (*id.* at 4), the Commonwealth reasons, "Plaintiffs do not have standing to raise the challenges asserted in their Complaints, and both Complaints must be dismissed." (*Id.*) For the purposes of deciding this motion, the Court will accept the Commonwealth's argument that the counties' authority is relevant to Plaintiffs' standing. It disagrees, however, that the host agreements are illegal under Virginia law.

■ As the Commonwealth stresses, Virginia's courts follow "Dillon's Rule," which holds that a municipal corporation possesses only those powers that are (1) expressly granted by the Commonwealth, (2) "necessarily or fairly implied in or incidental to the powers expressly granted," or (3) "essential to the declared objects and purposes of the corporation, not simply convenient but indispensable." *City of Richmond v. Board of Supervisors of Henrico County,* 199 Va. 679, 101 S.E.2d 641, 645 (1958). "Any fair, reasonable doubt concerning the existence of the power is resolved by the courts against the corporation and the power is denied." *Id.* Turning to this case. § 15.2–932 of the Virginia Code grants "[a]ny locality" authority "to contract with any person, whether profit or nonprofit, for garbage or refuse pickup and disposal services *in its locality* and to enter into contracts relating to waste disposal facilities which recover energy or materials from garbage, trash, and refuse." Va.Code Ann. § 15.2–932 (Michie 1997) (emphasis added). A possible reading of this statute—and the one that the Commonwealth urges upon the Court—is that it gives Virginia counties the power to contract only for the disposal of their own waste. Thus, were this an entirely open question, one might reasonably argue that the host agreements negotiated by the counties exceed the scope of authority bestowed by the General Assembly.

Unfortunately for the Commonwealth, however, this is not an open question, for the Supreme Court of Virginia has strong-

ly indicated, albeit in dicta, that counties *do* possess the authority that the Commonwealth says they lack. In *Concerned Residents of Gloucester County v. Board of Supervisors of Gloucester County,* a local citizens group challenged the validity of the host agreement between Waste Management and Gloucester County. 248 Va. 488, 449 S.E.2d 787, 789 (1994). Although the plaintiffs did not raise the same argument that the Commonwealth makes, the court left little doubt about its position on the question. "At the outset," it noted, "the General Assembly has declared the public policy of Virginia respecting the collection and disposal of solid waste *and has granted local governments extensive power in this matter.*" *Id.* (emphasis added). The court then proceeded to quote the Virginia Code at length, concluding:

> Where, as here, the General Assembly has authorized the County "to provide for the health and safety of its citizens ... and to promote the general health and welfare by providing for adequate [waste] disposal services," Code § 15.01–28.01,[3] action taken by the County in response thereto is a legislative act in the furtherance of the County's police powers.... *When a legislative body exercises its police powers, every possible presumption shall be indulged in favor of the validity of the legislative act.*

*Id.* 449 S.E.2d at 790 (citations omitted) (emphasis added). Later, responding to the plaintiffs' argument that the host agreement impermissibly tied the hands of future boards of supervisors, the court remarked: "It is firmly established that 'a county is capable of contracting and has the power to make all contracts which are proper and reasonably necessary to the execution of its corporate objects and purposes.' ... In the present case ... the General Assembly has authorized the County to contract for the collection and disposal of solid waste. The legislative intent could not be more clear." *Id.* at 794 (citations omitted). Similarly, in *Concerned Taxpayers of Brunswick County v.*

---

**3.** This section is now codified at Va.Code § 15.2–931.

*County of Brunswick*, the plaintiffs sought to block the construction of the Brunswick County regional landfill, arguing, among other things, that the County Board of Supervisors had negotiated its host agreement in violation of the Virginia Public Procurement Act. 249 Va. 320, 455 S.E.2d 712, 717–18 (1995). The court rejected this argument out of hand: "The bill of complaint . . . does not allege acts by any of the defendants that exceed their powers. Local governing bodies are expressly authorized to enter into contracts relating to waste disposal facilities." *Id.* 455 S.E.2d at 718 (*citing* Va.Code §§ 15.01–28.01 and 15.0128.02 (now §§ 15.2–931 and 15.2–932) and *Concerned Residents of Gloucester County*, 449 S.E.2d at 793.) In light of these unwavering pronouncements by Virginia's highest court, this Court cannot accept the Commonwealth's argument that the host agreements are "ultra vires" under Virginia law.

B. *The Commonwealth's Argument that the Action is Barred by the Doctrine of Sovereign Immunity.*

■ The Commonwealth next argues that the Court must dismiss this suit because the Eleventh Amendment and "related notions of sovereign immunity" (Defs' Mem. in Supp. at 5) protect an unconsenting state from suit in federal court. This argument ignores well-established precedent and misinterprets recent Supreme Court decisions.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state." Read broadly, the amendment "effectively immunizes the actions of state governments from federal court review, even when a state violates the most fundamental rights." Erwin Chemerinski, *Federal Jurisdiction* § 7.1 at 368 (2d ed.1994). Ever since the Supreme Court's landmark decision in *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), however, it has been understood that a suit in federal court to enjoin a *state officer* from enforcing an unconstitutional statute is not a suit against the state for purposes of the Eleventh Amendment. An officer seeking to enforce an unconstitutional enactment, the Court explained, "comes into conflict with the superior authority of that Constitution, *and he is . . . stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct.*" *Id.* at 159–60, 28 S.Ct. 441.

As has been widely noted, the *Ex Parte Young* doctrine rests upon a somewhat "fictional" distinction between the state and its officers. *Chemerinski, supra,* at 392. Nevertheless. "it serves as an effective mechanism for providing relief against unconstitutional conduct by state officers and for testing, in federal courts, the constitutionality of the state statutes under which they act." 13 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure:* Jurisdiction 2d § 3524 at 154 (2d ed.1984). It also allows a person to contest the validity of a state law by initiating a suit rather than waiting for an enforcement proceeding to be brought and raising the Constitution or other federal law as a defense. Thus, notwithstanding the doctrine's theoretical difficulties, both the Supreme Court and the Fourth Circuit consistently have relied upon it to maintain federal jurisdiction over cases challenging the enforcement of allegedly invalid state laws.[4]

■ Notwithstanding this precedent, the Commonwealth urges the Court to de-

---

4. *See, e.g., Morales v. Trans World Airlines,* 504 U.S. 374, 381, 112 S.Ct. 2031, 2035, 119 L.Ed.2d 157 (1992) (suit to prevent attorney general from enforcing standards governing airline fare advertising on ground that standards were preempted by federal Airline Deregulation Act); *Shaw v. Delta Air Lines,* 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 2899 n. 14, 77 L.Ed.2d 490 (1983) (suit to enjoin enforcement of state laws pre-empted by ERISA) (citing *Ex Parte Young* for proposition that "[i]t is beyond dispute that federal courts have jurisdiction over suits to enjoin state

part from *Ex Parte Young*. In its view, the doctrine has been severely undermined by the Supreme Court's recent decisions in *Seminole Tribe v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997), *Alden v. Maine*, —— U.S. ——, 119 S.Ct. 2240, —— L.Ed.2d—— (1999), *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, —— U.S. ——, 119 S.Ct. 2219, —— L.Ed.2d —— (1999), and *Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank*, —— U.S. ——, 119 S.Ct. 2199, —— L.Ed.2d—— (1999). Those cases do not bear the weight that the Commonwealth seeks to place on them. To be sure, these decisions have breathed new life into the Eleventh Amendment, and, in a couple unique circumstances, have explicitly limited the application of *Ex Parte Young*.[5] Nowhere, however, has

the Court suggested that *Ex Parte Young* is in jeopardy. To the contrary, it has repeatedly indicated that the doctrine remains sound. *See. e.g., Seminole Tribe*, 517 U.S. at 71 n. 14, 116 S.Ct. at 1131 n. 14 (citing *Ex Parte Young* for proposition that "an individual can bring suit against a state officer in order to ensure that the officer's conduct is in compliance with federal law"); *Coeur d'Alene Tribe*, 521 U.S. at 268, 117 S.Ct. at 2034 ("We do not, then, question the continuing vitality of the *Ex Parte Young* doctrine.") (principal opinion); *Alden*, —— U.S. at ——, 119 S.Ct. at 2263 (*Ex Parte Young* doctrine "is based in part on the premise that ... certain suits for declaratory or injunctive relief against state officers must ... be permitted if the Constitution is to remain the supreme law of the land"). Since this case fits comfortably under the *Ex Parte Young* exception, the Court rejects the Commonwealth's sovereign immunity defense.[6]

officials from interfering with federal rights"); *CSX Transportation v. Board of Public Works*, 138 F.3d 537, 541 (4th Cir.1998) ("An injunction against the future collection of the illegal taxes, even those that already have been assessed, is prospective, and therefore available under the *Ex Parte Young* doctrine."); *Virginia Hospital Association v. Baliles*, 868 F.2d 653, 662 (4th Cir.1989) (suit against officials to enjoin state's Medicaid reimbursement procedures not barred by Eleventh Amendment; "[a] suit against Virginia officials for actions done in obedience to Commonwealth law naturally interests the Commonwealth, but is just the sort of action *Ex Parte Young* authorized.")

5. In *Seminole Tribe*, the Court held that the Indian Commerce Clause of the Constitution does not give Congress the power to abrogate a state's immunity under the Eleventh Amendment. 517 U.S. at 72, 116 S.Ct. at 1131–32. It further held that, in light of the "intricate remedial scheme" created by the Indian Gaming Regulatory Act, an Indian tribe may not seek to enforce its rights under the Act through a traditional *Ex Parte Young* action. *Id.* at 73–76, 116 S.Ct. 1114; 116 S.Ct. at 1132–33. In *Coeur d'Alene Tribe*, the Court held that an action against state officials alleging ownership of certain lands was, in reality, a quiet title action against the state implicating "special sovereignty interests." 521 U.S. at 281–82, 117 S.Ct. at 2040. "Under these particular and special circum-

stances," the Court declared, "we find the *[Ex Parte] Young* exception inapplicable." *Id.* at 287, 117 S.Ct. at 2043. In *Alden*, the Court held that Congress lacks the power under Article I to abrogate a state's immunity from suit in its own courts. —— U.S. at ——, 119 S.Ct. at 2266. In the *Florida Prepaid Postsecondary* cases, the Court held that the Fourteenth Amendment does not give Congress the power to subject states to patent infringement and false advertising suits in federal court. —— U.S. at ——, ———–——, 119 S.Ct. at 2205, 2224–25.

6. In a footnote, the Commonwealth contends that, even if sovereign immunity does not bar this suit, Governor Gilmore should be dismissed because he is not a proper party. (Defs' Mem. in Supp. at 9. n. 4.) To be subject to suit under *Ex Parte Young*, a state officer must have "some connection with the enforcement of the [allegedly unconstitutional] act." 209 U.S. at 157, 28 S.Ct. 441. As the Commonwealth points out, many courts have held that a generalized duty to enforce state law is insufficient. *Children's Healthcare Is a Legal Duty v. Deters*, 92 F.3d 1412, 1416 (6th Cir.1996) (citing cases); *Los Angeles County Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992). Governor Gilmore, however, has actively and publicly defended the legislation at issue. He is therefore a proper defendant.

## C. *Plaintiffs' Commerce Clause Challenge.*

Plaintiffs have alleged that each of the statutes at issue violates the Commerce Clause of the Constitution.[7] (Waste Management Complaint, Counts I, III, VII, and XI; Brunswick Complaint, Counts I, II, IV). The Commonwealth moves the Court to dismiss these claims on two grounds. First, renewing an argument it made in response to Plaintiffs' Motion for a Preliminary Injunction, it argues that Congress has expressly authorized states to interfere with interstate commerce in municipal solid waste through Subtitle D of the Resource Conservation and Recovery Act ("RCRA") Second, it contends that the statutes at issue fall within the "market participant" exception to the Commerce Clause. Both arguments lack merit.

 Turning first to the Commonwealth's RCRA argument, as the Court previously acknowledged, it is well-established that Congress may permit states to discriminate against interstate commerce and thereby validate what otherwise would be unconstitutional state action. "In order for a state law to be removed from the reach of the dormant Commerce Clause, however, congressional intent to authorize the discriminating law must be either *'unmistakably clear'* or *'expressly stated.'* " *Environmental Technology Council v. Sierra Club*, 98 F.3d 774, 782 (4th Cir.1996) (citing cases). The isolated bits of legislative history and broadly worded statutory language on which the Commonwealth relies do not come close to expressing an "unmistakably clear" intent on the part of Congress to exempt state laws relating to solid waste from the limitations of the dormant Commerce Clause.[8]

 The Commonwealth's market participation argument is equally ill-founded. Under the market participation exception, a state is exempt from dormant commerce clause restrictions where it is participating in the market like a private buyer or seller, as opposed to regulating the market "in its distinctive governmental capacity." *New Energy Co. of Indiana v. Limbach*, 486 U.S. 269, 277, 108 S.Ct. 1803, 1809, 100 L.Ed.2d 302 (1988); *accord Smith Setzer v. South Carolina Procurement Review Panel*, 20 F.3d 1311, 1318 (4th Cir.1994). Thus, for example, when a State manufactures and sells cement, *Reeves, Inc. v. Stake*, 447 U.S. 429, 100 S.Ct. 2271, 65 L.Ed.2d 244 (1980), or enters the market for abandoned automobiles, *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976), it may "favor its own citizens over others" without running afoul of the Commerce Clause. *Id.* at 810, 96 S.Ct. at 2498. For the exception to apply, however, the state's participation in the market must be "direct." *White v. Massachusetts Council of Const. Employers*, 460 U.S. 204, 208, 103 S.Ct. 1042, 1044–45, 75 L.Ed.2d 1 (1983).

The Commonwealth's argument that the market participant exception applies to this case requires little discussion. Virginia is not acting like a private participant in the waste disposal market. It is attempting to regulate the conduct of others in that market as only a state, as state, can do. The market participant doctrine therefore offers it no protection.

7. The Commerce Clause grants Congress "the Power ... to regulate Commerce ... among the several States." U.S. Const. art. I, § 8, cl. 3. Although it is phrased as a delegation of power to Congress, it "has long been understood to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden" the free flow of commerce across state lines. *Oregon Waste Systems, Inc. v. Dept. of Environmental Quality*, 511 U.S. 93, 98, 114 S.Ct. 1345, 1349, 128 L.Ed.2d 13 (1994).

8. The Commonwealth's suggestion that the Court has given only "cursory" consideration to this issue (Defs' Mem. in Supp. at 13) is not well-taken. The Court has thoroughly considered the evidence of Congress' alleged intent offered by the Commonwealth. Like Justice O'Connor in C & A Carbone, Inc. v. Town of Clarkstown, New York, 511 U.S. 383, 408–10, 114 S.Ct. 1677, 1691–92, 128 L.Ed.2d 399 (1994), however, it simply finds the evidence insufficient to satisfy the exacting standard established by the Supreme Court.

D. *Plaintiffs' Contract Clause Claims.*

▉▉▉ Plaintiffs assert in their Complaints that the challenged statutes violate the Contract Clause of the Constitution[9] in that they impair various contracts, such as the host agreements between Waste Management and the counties in which its regional landfills are located. (Waste Management Complaint, Counts II, IV, VIII; Brunswick Complaint, Count VI.) Apparently in an effort to obtain attorneys' fees under 42 U.S.C. § 1988, they have further alleged that the laws "deprive plaintiffs of rights secured by the Constitution and laws of the United States in violation of 42 U.S.C. § 1983."[10] The Commonwealth contends that Plaintiffs' Contract Clause claims must be dismissed in whole or in part because (1) § 1983 does not provide a remedy for violations of the Contract Clause; (2) Plaintiffs have failed to allege a violation of the Contract Clause; (3) the challenged legislation constitutes a legitimate exercise of Virginia's police power; and (4) the Contract Clause does not protect against the impairment of future contracts. The Court agrees that the Contract Clause does not apply under the facts alleged here and therefore dismisses these claims.

As the Supreme Court observed in *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 241, 98 S.Ct. 2716, 2720, 57 L.Ed.2d 727 (1978), the Contract Clause "was perhaps the strongest single constitutional check on state legislation during our early years as a Nation," but "receded into comparative desuetude with the adoption of the Fourteenth Amendment." 438 U.S. at 241, 98 S.Ct. at 2720. Since the late 1970s, however, it has been invoked with increasing frequency. Unfortunately, the cases sometimes analyze Contract Clause claims in potentially misleading terms.

The Fourth Circuit has identified a three-part analysis for "harmonizing" the dictates of the Contract Clause with the regulatory power of the states. *Baltimore Teachers Union v. Mayor and City Council of Baltimore*, 6 F.3d 1012, 1015 (4th Cir.1993). First, there must have been "impairment of a contract." *Id.* Second, the impairment must be *substantial,* which will depend on several factors. *City of Charleston v. Public Service Commission of West Virginia,* 57 F.3d 385, 392–93 (4th Cir.1995). Finally, if the impairment is substantial, "it must be determined whether that impairment is nonetheless permissible as a legitimate exercise of the state's sovereign powers." *Baltimore Teachers Union,* 6 F.3d at 1015.

▉▉▉ The problem with this analysis is that the first step risks confusing the impairment of a contract with the impairment of its *"obligation,"* which is all that the Contract Clause forbids. *Ogden v. Saunders,* 25 U.S.(12 Wheat.)213, 256, 6 L.Ed. 606 (1827) ("[T]he error of those who controvert the constitutionality of the bankrupt law under consideration ... has arisen from not distinguishing accurately between a law which impairs a contract, and one which impairs its obligation.") Those courts that have parsed the phrase "obligation of contracts" consistently have held that it refers not to the general benefit that a private party hopes to derive from a contract but to "the means which, at the time of its creation, the law affords for its enforcement." *State of Louisiana ex rel Nelson v. Police Jury of the Parish of St. Martin,* 111 U.S. 716, 720, 4 S.Ct. 648, 28 L.Ed. 574 (1884); *see also Metropolitan St. Louis Sewer Dist. v. Ruckelshaus,* 590 F.Supp. 385, 389 (E.D.Mo.1984) ("A law is not impermissible merely because an object of the regulation is a party to some contracts.... A preliminary question under the contract clause is whether the legislative action impaired or changed a specific contractual obligation."); *North-*

---

**9.** Under the Contract Clause, "No State shall ... pass any ... Law impairing the Obligation of Contracts." U.S. Const. art I, § 10, cl. 1.

**10.** Section 1983 imposes civil liability upon any one who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws."

*western Nat'l Life Insur. Co. v. Jordan,* 447 F.Supp. 856, 859 (D.Nev.1978) ("The obligation of a contract is defined as the law or duty which binds the parties to perform their agreements. . . ."); *McNee v. Wall,* 13 F.Supp. 326, 328 (S.D.Fla.1935) ("The obligation of a contract is the means provided by law for the enforcement of it.") Thus, the "obligation of contracts" is "impaired" for the purposes of the Contract Clause when a law "materially changes [a contract's] binding force," *id.,* or "deprive[s] the holder of the contract all adequate and efficacious remedy." *Nelson,* 111 U.S. at 721, 4 S.Ct. 648.

Not surprisingly, then, the Supreme Court has invoked the Contract Clause only to strike down statutes that, rather than creating a "generally applicable rule of conduct," are "limited in effect to contractual obligations and remedies." *Exxon Corp. v. Eagerton,* 462 U.S. at 191, 103 S.Ct. at 2306. In *United States Trust Co. v. New Jersey,* 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977), the Court invalidated New York and New Jersey laws that retroactively repealed a covenant that the states had entered into with the holders of certain bonds. Likewise, in *Allied Structural Steel Co., supra,* the Court held that the Contract Clause forbid the application of a Minnesota pension benefits law to an employer that had closed its offices just after the law became effective because the law retroactively altered the employer's contractual obligations to its employees. *See also W.B. Worthen Co. ex rel. Board of Com'rs of Street Imp. Dist. No. 513 of Little Rock, Ark. v. Kavanaugh,* 295 U.S. 56, 55 S.Ct. 555, 79 L.Ed. 1298 (1935) (striking down law limiting remedies available to mortgagees).

In this case, Plaintiffs allege the impairment of several contracts. First, they al-

lege that the tonnage cap impairs the host agreements between Waste Management and its host communities, including co-plaintiff Charles City County, and between Brunswick and Brunswick County in that it will prevent the regional landfills from accepting waste in the levels anticipated and "necessary to recover the costs of constructing the landfill[s] and to operate the landfill[s] cost-effectively." (Waste Management Complaint ¶ 80; Brunswick Complaint ¶ 107.) Second, they allege that the cap will impair the contracts between Waste Management and its customers because the prices in those contracts were based on the assumption that Waste Management would be able to utilize the capacity of its regional landfills without limitation. (Waste Management Complaint ¶ 82.) Third, they allege that the barging restrictions [11] will impair the contract between Waste Management and co-plaintiff Weanack,[12] because they will prevent the parties from deriving the anticipated benefits of that contract. (Waste Management Complaint ¶¶ 97, 101, 128.) None of these allegations describe an impairment of the "obligation of contracts." Rather, they merely suggest that the statutes at issue will make those contracts less profitable than expected or make performance less desirable, or even impossible. As the district court observed in *Metropolitan St. Louis Sewer District, supra,* such "interference" with contractual expectations does not amount to an "impairment of obligations" within the meaning of the Contract Clause, for it does not alter the parties' rights and duties vis a vis each other. 590 F.Supp. at 389. The Court therefore dismisses Counts II, IV, and VIII of the Waste Management Complaint and Count VI of the Brunswick Complaint.

**11.** As discussed in the Court's Memorandum Opinion on Plaintiffs' Motion for a Preliminary Injunction, the barging restrictions include: (1) a ban on all containerized solid waste barging until the Virginia Waste Management Board promulgates new regulations; (2) a requirement that the new regulations forbid the stacking of waste containers more than two high; and (3) a total ban on the use of solid waste barges on the James, Rappahannock, and York rivers.

**12.** Weanack owns a facility for off-loading containerized solid waste from barges on the James River. Waste Management operates the facility under its contract with Weanack.

E. *Plaintiffs' Supremacy Clause Claims.*

██ Plaintiffs allege that the barging restrictions are preempted by federal law and are therefore void under the Supremacy Clause of the Constitution.[13] (Waste Management Complaint, Counts V and IX; Brunswick Complaint, Count III.) As with their other claims, the Waste Management plaintiffs seek relief under 42 U.S.C. § 1983.[14] The Commonwealth argues that § 1983 does not provide a remedy for the alleged Supremacy Clause violation. The Court disagrees. In any event, even if § 1983 did not provide a remedy, dismissal would be inappropriate.

██ Section 1983 does not create any substantive rights.[15] Rather, it provides a *remedy* for the violation of rights that are defined elsewhere, either in the Constitution or in federal statute. *Young v. City of Killeen,* 775 F.2d 1349, 1352 (5th Cir.1985). The issue here, then, is whether the violations alleged by Plaintiffs give rise to the § 1983 remedy. The Supreme Court has made clear that "the Supremacy Clause, of its own force, does not create any rights enforceable under § 1983." *Golden State Transit v. City of Los Angeles,* 493 U.S. 103, 107, 110 S.Ct. 444, 449, 107 L.Ed.2d 420 (1989). Rather, the § 1983 remedy will be available for a violation of a federal statute only if the statute *itself* "gives rise to a federal right." *Blessing v. Freestone,* 520 U.S. 329, 340, 117 S.Ct. 1353, 1359, 137 L.Ed.2d 569 (1997). Three factors are relevant to determining whether a federal statute creates a right enforceable under § 1983. "First, Congress must have intended that the provision in question benefit the plaintiff." *Id.* Second, the asserted right must not be "so vague and amorphous that its enforcement would strain judicial competence." *Id.* (in-

ternal quotation marks and citations omitted). Finally, the statutory provision "must unambiguously impose a binding obligation on the States. In other words, [it] must be couched in mandatory rather than precatory terms ." *Id.* As a general matter, a plaintiff seeking relief under § 1983 must identify the statutory provision on which he relies "with particularity," for "[o]nly when the complaint is broken down into manageable analytic bites" can a court determine whether the plaintiff's claims satisfy the three criteria set forth above. *Id.* at 342, 117 S.Ct. at 1360.

In their response to the Commonwealth's motion, Plaintiffs indicate that their preemption claim principally relies on the federal documentation provisions governing the use of vessels in the "coastwise trade." *See* 46 U.S.C. § 12103 (describing prerequisites for issuance of a "certificate of documentation") and § 12106 (describing criteria for endorsing a certificate of documentation with a "coastwise endorsement"). The Supreme Court has held that a federal license confers upon the licensee a "right" to operate freely .in each state's waters, subject only to legitimate exercises of the state's police power. *Douglas v. Seacoast Products, Inc.,* 431 U.S. 265, 281, 97 S.Ct. 1740, 1750, 52 L.Ed.2d 304 (1977) (striking down Virginia statutes prohibiting federally licensed vessels owned by nonresidents from fishing in the Chesapeake Bay and prohibiting ships owned by nonresidents from catching fish anywhere in the Commonwealth) (*citing Gibbons v. Ogden,* 22 U.S (9 Wheat.) 1, 213–14, 6 L.Ed. 23 (1824)). Thus, it seems evident that the provisions in question were intended to benefit plaintiff Hale Intermodal Marine Company, whose barges are federally licensed to engage in the coastwise trade. Furthermore, the right articulated

---

13. The Supremacy Clause provides that the "Constitution and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2.

14. Brunswick has not sought relief for the alleged Supremacy Clause violation under § 1983.

15. It is therefore improper to allege, as Plaintiffs do, that a defendant has "violated" § 1983.

by the Supreme Court in *Douglas* is hardly "vague" or "amorphous." The Commonwealth contends, however, that Plaintiffs' § 1983 claim must fail because the statute does not explicitly impose any obligation on the states. The Supreme Court rejected an identical argument in *Golden State Transit, supra,* in which it held that the National Labor Relations Act gives employers rights against state interference, which rights are enforceable under § 1983:

> The city's contrary argument, that the NLRA does not secure rights against the State because the duties of the State are not expressly set forth in the text of the statute, is not persuasive. We have held, based on the language, structure, and history of the NLRA, that the Act protects certain rights of labor and management against governmental interference. While it is true that [this rule] is not set forth in the specific text of an enumerated section of the NLRA, that might well also be said with respect to any number of rights or obligations that we have found implicit in a statute's language.... The violation of a federal right that has been found to be implicit in a statute's language and structure is as much a "direct violation" of a right as is the violation of a right that is clearly set forth in the text of the statute.

*Golden State Transit,* 493 U.S. at 111–112, 110 S.Ct. at 451. The Court therefore denies the Commonwealth's motion to dismiss Plaintiffs' § 1983 claim insofar as it asserts rights under the federal licensing statutes.[16]

### F. *Plaintiffs' Equal Protection Claims.*

Plaintiffs also claim that the barging restrictions and a restriction on the transportation of municipal solid waste by truck violate the Equal Protection Clause of the Fourteenth Amendment. (Waste Management Complaint, Counts VI and X; Brunswick Complaint, Count V.) The Commonwealth contends that these claims must be dismissed because Plaintiffs have failed to allege facts sufficient to show that the statutes at issue lack a "rational basis." In light of the low level of scrutiny to which these statutes are subject under the Equal Protection Clause, Plaintiffs' odds of success on these claims are not favorable. Nonetheless, they are entitled to proceed forward. As discussed above, dismissal for failure to state a claim is proper only if the Plaintiff could not recover under *any set of facts that could be proven* in support of the allegations of the complaint. Since it is possible that, in the course of discovery, Plaintiffs may assemble additional evidence in support of their equal protection claims, the Court declines to dismiss those claims at this time.

### G. *Charles City County's Standing to Sue.*

The Commonwealth also argues that the Court should dismiss Charles City County ("the County") as a plaintiff because it lacks standing to sue. The Court declines to address this issue since it is clear that each of the other plaintiffs have standing to raise the claims alleged. *Carey v. Population Services International,* 431 U.S. 678, 682, 97 S.Ct. 2010, 2014, 52 L.Ed.2d 675 (1977) ("We conclude that appellee Population Planning Assistance has the requisite standing and therefore have no occasion to decide the standing of the other appellees.")

### IV. CONCLUSION

In conclusion, for the reasons stated above, the Court will dismiss Counts II, IV, and VIII of the Waste Management Complaint and Count VI of the Brunswick Complaint. In all other respects, the Motion to Dismiss is DENIED.

---

**16.** Even if the Court were to accept the Commonwealth's position that Plaintiffs have asserted no rights enforceable under § 1983, complete dismissal of their Supremacy Clause claims would be inappropriate, because a plaintiff seeking injunctive relief against state regulation may base federal jurisdiction upon the Supremacy Clause itself. *Shaw v. Delta Air Lines, supra,* 463 U.S. at 96 n. 14, 103 S.Ct. at 2899 n. 14.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.