KING, Circuit Judge,
concurring in part and dissenting in part:
I am pleased to concur in nearly all of the fine opinion authored by my friend Judge Hamilton. I part company with him solely on the issue concerning the propriety of this suit being maintained against Governor Gilmore, and I respectfully dissent on that point. In determining that the Governor is not a proper party to this action, the majority, in my view, erroneously concludes that “[t]he fact that he has publicly endorsed and defended the *351 challenged statutes does not alter our analysis.” Ante, at 331. The majority instead posits that our resolution of this question rests on whether his general duty to “take care that the laws be faithfully executed,” Va. Const, art. V, § 7, makes him a proper defendant in this case under the exception to Eleventh Amendment immunity found in Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Because Governor Gilmore’s connection to the statutes at issue is far more specific than his general duty to uphold the law, I would not dismiss him as a party.[1]
The majority’s own account of the facts in this case confirms to me that Governor Gilmore is not just a superfluous target of the Plaintiffs. Upon learning of New York City’s imminent exportation of municipal solid waste (“MSW”), the Governor announced plans to “dispatch[ ] his top environmental officials to meet with their counterparts from other states ‘to ensure that Virginia does not drown in a regional sea of garbage.’ ” Ante, at 327 (quoting J.A. 597). He also imposed a moratorium on new landfill development, and he instructed his Secretary of Natural Resources to recommend legislation to deal with the MSW problem. See id. at 327. The Governor himself proposed such legislation in his 1999 State of the Commonwealth address to the General Assembly of Virginia, referring specifically to Waste Management’s plans “ ‘to import four thousand more tons of New York City trash into Virginia per day.’ ” Id. (quoting J.A. 630). Moreover, “when New York City Mayor Giuliani suggested that Virginia might have an obligation to accept New York City’s MSW, Governor Gilmore responded that ‘the home state of Washington, Jefferson, and Madison has no intention o[f] becoming New York’s dumping grounds.’ ” Id. (quoting J.A. 635) (alteration in original). In fact, in early 1999, the General Assembly approved and the Governor signed into law the five statutory provisions at issue in this case. See id. at 327-28.
Furthermore, Governor Gilmore’s co-defendants — the Commonwealth’s Secretary of Natural Resources and the Director of the Virginia Department of Environmental Quality — possess unquestioned authority to enforce these statutes. Significantly, though not explicitly discussed in the course of the district court proceedings, they serve under the direction and control of the Governor. See Va.Code Ann. § 2.1-51.7 (1995) (“The Secretary [of Natural Resources] shall hold office at the pleasure of the Governor....”); id. §2.1-51.8:1 (“The Secretary of Natural Resources shall be subject to direction and supervision by the Governor.”); Va.Code Ann. § 10.1-1185 (1998) (“The Department [of Environmental Quality] shall be headed by a Director appointed by the Governor to serve at his pleasure for a term coincident with his own. The Director ... shall, under the direction and control of the Governor, exercise such power and perform such duties as are conferred or imposed upon him by law and shall perform such other duties as may be required of him by the Governor....”).
In sum, not only did Governor Gilmore conceive and engineer passage of the statutes, he has championed those statutory provisions and, as is reflected in the Virginia Code, he possesses the direct authority *352 over his co-defendants to effect his clear aim of enforcement.[2] In my view, the Governor’s connection to the disputed statutory provisions amply supports retaining him as a defendant in this case, even under a stringent test for applying the Ex parte Young exception such as that recently articulated by the Fifth Circuit. See Okpalobi v. Foster, 244 F.3d 405, 416-17 (5th Cir.2001) (en banc) (plurality opinion) (“[A]ny probe into the existence of a Young exception should gauge (1) the ability of the official to enforce the statute at issue under his statutory or constitutional powers, and (2) the demonstrated willingness of the official to enforce the statute.”).[3]
I respectfully dissent from the majority opinion on this point only.

. Likewise, the district court, in retaining Governor Gilmore as a party, recognized that his connection to the disputed statutes extends beyond his general duty to uphold the law. The court noted that "many courts have held that a generalized duty to enforce state law is insufficient. Governor Gilmore, however, has actively and publicly defended the legislation at issue. He is therefore a proper defendant.” Waste Mgmt. Holdings, Inc. v. Gilmore, 64 F.Supp.2d 537, 543 n. 6 (E.D.Va.1999) (citations omitted).

. Because this case does not squarely present the issue, I need not take a position here on whether a governor's general duty to uphold the law, without more, can be sufficient to invoke the exception to Eleventh Amendment immunity found in Ex parte Young.

. At the very least, I would, rather than rule in favor of the Governor at this stage, remand this issue to the district court for a more extensive examination of the Governor’s relevant statutory and constitutional powers in relation to the factual underpinnings of this case. Cf. Lytle v. Griffith, 240 F.3d 404, 410 (4th Cir.2001) (where Eleventh Amendment immunity raised for first time on appeal, exercising discretion to remand the issue to the district court "to address in the first instance the relevant questions of fact and state law").